In the Matter of the Claim of FRANCES RAVEN, Appellant. LOUIS L. LEVINE, as Industrial Commissioner, Respondent.

Third Department, November 30, 1972.

*Frances Raven,* appellant in person.

*Louis J. Lefkowitz, Attorney-General (Murray Sylvester* and *Harvey A. Reidel* of counsel), for respondent.

HERLIHY, P. J. This is an appeal by the claimant from a decision of the Unemployment Insurance Appeal Board, filed January 21, 1972, which adopted and affirmed a Referee's decision sustaining the initial determination of the respondent that the claimant was disqualified from receiving benefits because she provoked her discharge and therefore voluntarily left her employment without good cause.

The claimant testified that she was unemployed for about two weeks following her discharge and then took temporary employment because she was looking for the same kind of work as she did before.

The witness for the employer testified that the company permits coffee between 9:00-9:15 A.M. and that when he observed the claimant having coffee about 9:30 A.M. he told her " to get rid of the coffee ". He further testified that she became " belligerent " saying " she was going to finish it [coffee] right there " and that she was discharged. He also stated that claim-

ant said "If you fire me, I'll get unemployment insurance" which statement the witness took exception to. She testified that on the morning in question she arrived a little late due to her train delay and that about 9:18 or 9:20, before she punched her card, she was finishing her coffee. In response to a demand by the company representative to throw her coffee away or get fired, the claimant responded by stating "I'm not going to throw my coffee away, it's not that late. If you fire me, don't forget I'll collect unemployment", which statement was apparently found objectionable. The claimant further contended that her services were terminated because, under a union contract, having completed 90 days, she would be entitled to a substantial increase in pay.

The board's decision was premised on the following: "The employer contended that claimant's services were terminated because of the brusque manner in which claimant responded when ordered to discard the coffee. It must be held on the evidence and testimony that claimant was thereby responsible for the termination of her services. She was correctly disqualified for having been responsible for that termination which is in effect a voluntary leaving of employment without good cause, under interpretations of the law."

The actual reason for the firing was stated by the claimant's supervisor to be "the situation arose at the time when she was flippant, she was flippant in her manner, in the way she answered." As noted by the respondent in his brief, the question of whether or not a claimant has provoked his discharge so as to be disqualified from benefits is primarily a factual determination for the board. The present record establishes that the claimant's superior was offended by her reaction to his request that she dispose of her coffee. As a general proposition where unemployment occurs without the reason therefor being a lack of work and without the situation being controlled by rules as to seniority, it is because there are some traits or characteristics about the employee which somehow are not desired by the employer. However, it would seem certain that not all such offending traits or characteristics or possibly conduct would justify a finding that the employee voluntarily left employment without good cause (e.g., bad breath; as to long hair, cf. *Matter of Gladstone* [*Catherwood*], 36 A D 2d 204, affd. 30 N Y 2d 576). In the ordinary course of events there is no reason to expect that employees will at all times be absolutely docile or servile in regard to their immediate supervisors and/or employers. On the other hand, engaging in protracted offensive conduct

toward a supervisor or employer can be the equivalent of voluntarily leaving one's employment without good cause because of the provocation involved. (See *Matter of Hoh* [*Levine*], 39 A D 2d 620; *Matter of Kreager* [*Catherwood*], 34 A D 2d 1033, cert. den. 400 U. S. 910.)

The essential question is whether or not the conduct of the claimant as testified to by the employer exhibits such an utter disregard for the continuation of employment as to be equivalent to a deliberate attempt to cease employment without quitting and thus " the discharge becomes equivalent to a voluntary leaving of employment without good cause". (*Matter of Salit* [*Catherwood*], 15 A D 2d 852, 853.)

Accepting the employer's version of events in its entirety as to this isolated instance, there is no reasonable inference that this was other than mere petty irritability on the part of both the supervisor and the claimant or as stated by the Referee at the hearing " she didn't like your attitude and you didn't like hers ". There is no substantial evidence which would sustain a finding that the claimant should have realized that her conduct would probably provoke her discharge and there is certainly no substantial evidence to support an inference that the claimant desired to have her employment cease. To support a determination that the claimant voluntarily left her employment without good cause by provoking her discharge, there must be substantial evidence of such conduct which clearly, under ordinary circumstances, should be expected by the claimant to result in a dismissal or to support the employer's claim of provocation. The record does not sustain such a finding.

The decision should be reversed, with costs, and matter remitted for further proceedings not inconsistent herewith.

STALEY, JR., GREENBLOTT, KANE and REYNOLDS, JJ., concur.

Decision reversed, with costs, and matter remitted for further proceedings not inconsistent herewith.