ROCHESTER CAPITAL LEASING CORPORATION *v.* RICHARD MCCRACKEN.

[No. 1-972A78. Filed April 24, 1973.]

*James R. Cotner,* of Bloomington, for appellant.

*Thomas A. Berry, Stephen L. Ferguson, Ferguson, Berry, Ferguson & Lloyd,* of Bloomington, for appellee.

HOFFMAN, C.J.—The primary issue presented by this appeal is whether the general verdicts of the jury and the judgment of the trial court thereon would support a finding that defendant Rochester Capital Leasing Corporation, now known as OPIC Corporation (OPIC) had breached an employment contract with plaintiff Richard McCracken was contrary to law.

McCracken filed his amended complaint for breach of contract alleging, *inter alia,* that OPIC had repudiated an

employment contract whereby McCracken was to be employed by OPIC for a period of three years at a salary of $20,000 per year. OPIC filed its counterclaim alleging that McCracken had executed a promissory note calling for payment to OPIC Corporation of the sum of $3,472.02 and that such note is due and unpaid. The cause was tried to a jury which found for plaintiff Richard McCracken and against defendant OPIC Corporation upon plaintiff's complaint. Compensatory damages were fixed at $48,600 plus interest in the amount of $3,000. The jury also found for counter-claimant OPIC Corporation upon its counterclaim and against counter-defendant Richard McCracken. Damages were fixed in the sum of $3,472.02 plus interest in the amount of $121.52. The trial court entered judgment on the verdicts for the plaintiff and against the defendant in the amount of $48,006.46. OPIC filed its motion to correct errors which was overruled by the trial court and this appeal followed.

The factual background pertinent to this appeal is shown by the record before us to be as follows: McCracken purchased a portion of the Cochran Chair Company in 1963. In 1964 and 1965 he purchased the remainder of the company and became its President. McCracken testified that when he purchased the Cochran Chair Company it was an "old, worn-out, and runned-down company that needed lots of medication both financially and management and leadership." McCracken invested his own resources and negotiated a loan from the Small Business Association. While McCracken was the owner of Cochran Chair Company he lived in a dormitory in the factory with other employees. He subsequently moved into an apartment of a designer working for the company. In lieu of paying rent for sharing such apartment, he hired a housekeeper and placed such housekeeper on the company payroll. On September 11, 1968, a sale of the company was effectuated between McCracken and OPIC. After the sale of the company, McCracken continued to employ a housekeeper on the company payroll. McCracken testified that he "let the housekeeper

situation run until I [he] got my [his] money back" from certain payments which he personally made on behalf of the company during the time when he was the owner thereof.

The agreement executed by McCracken as seller and OPIC as purchaser for the purchase and sale of stock in the Cochran Chair Company provided, in pertinent part, as follows:

> "*Section 1.2.* The purchase price for all of the Shares of the Seller will be $70,000.00 which will be paid by the execution and delivery to the Seller of the subordinated promissory note of the Purchaser in the principal amount of $70,000.00 payable with interest at Six (6) per cent per annum in Forty (40) equal consecutive quarterly installments of $1,750.00 plus interest each commencing on the 1st day of December, 1968. * * * As further consideration for the purchase of the shares of Seller the Purchaser shall execute the employment contract marked Exhibit 6 attached hereto and made a part hereof and also execute the indemnification attached hereto and made a part hereof and marked Exhibit 9."

The employment contract given by OPIC as partial consideration listed the duties which McCracken agreed to perform and contained the terms of his employment as follows:

> "2. *Duties:* The Employee may be the President and Executive Director as well as a consultant for Cochran Chair Company, Inc., and agrees to devote his full time and attention and best efforts to the performance of his duties hereunder, which may include such additional Executive duties on behalf of the Cochran Chair Company, Inc. in other operations of a character in keeping with his position as President of Cochran Chair Company, Inc. as may from time to time be assigned to him by the Board of Directors. As Chief Executive Officer and General Manager of Employer, Employee may be in complete charge of the operations of Employer and may have full authority and responsibility, subject to the general direction and control of the Board of Directors of Employer, for formulating policies and administering the affairs of Employer in all respects, if the employers so desire. If the employers do not desire such duties by employee, employee shall remain available as a consultant at the salary hereinafter provided."

The construction of a written contract which is free

from ambiguity is a question of law for the court. *Zenor* v. *Johnson, et al.* (1886), 107 Ind. 69, 7 N.E. 751.

Here, the agreement for the purchase and sale of the stock in the Cochran Chair Company is clear and unambiguous. Part of the consideration given by OPIC was the execution of the employment contract which was attached to, and explicitly made a part of, the purchase and sale agreement. The employment contract provided that McCracken was to be employed as President, Executive Director and consultant for a term of three years at an annual salary of $20,000.

A contract of employment for a definite term may not be terminated before the expiration of such term except for cause or by mutual agreement unless the right to do so is reserved in the contract. *Little* v. *Federal Container Corporation* (1969), 61 Tenn. App. 26, 452 S.W.2d 875, 877-878; 56 C. J. S., *Master and Servant*, § 32, at 415-416; § 33, at 419.

In the instant case, the right to discharge McCracken at will from his duties as President and Executive Director was reserved in the contract by OPIC. Such provisions have been held to be binding upon the contracting parties. *Montgomery Ward & Co., Inc.* v. *Guignet* (1942), 112 Ind. App. 661, 670, 45 N.E.2d 337.

The contract further provided that in the event of the termination of McCracken's duties as President and Executive Director by OPIC, McCracken was to remain as consultant. Thus, the question becomes whether the admitted employment of a housekeeper by McCracken in his capacity as President and Executive Director, and payment for same from company funds, justifies discharge of McCracken as consultant. OPIC, without recitation of case law supporting its position, argues that McCracken's discharge as consultant was justified. We disagree.

Several jurisdictions hold that where facts are undisputed, the question of what constitutes good and sufficient cause for

discharge is one of law for the court. *LaFontaine* v. *Developers & Builders, Inc.* (1968), 261 Iowa 1177, 156 N.W. 2d 651, 658; *Reading Tube Corp.* v. *Steel Workers Federation* (1953), 173 Pa. Super. 274, 98 A. 2d 472; *Bernstein* v. *Lipper Mfg. Co.* (1932), 307 Pa. 36, 160 A. 770; *Spotswood Arms Corporation* v. *Este* (1926), 147 Va. 1047, 133 S.E. 570.

Other jurisdictions follow the line of reasoning which we here adopt, that the question of whether an alleged act occurred is a question of fact for the jury. Where the facts are undisputed, the evidence may be such as to justify discharge as a matter of law. However, where the facts, even though undisputed, are such that reasonable men might differ as to whether the alleged misconduct is so inconsistent with the employer-employee relationship as to justify discharge, the question is one of fact for the jury. *Ward* v. *Consolidated Foods Corporation* (Tex. Civ. App. 1972), 480 S.W. 2d 483; *Mason* v. *Lyl Productions* (1968), 69 Cal. Reptr. 769, 69 Cal. 2d 79, 443 P. 2d 193; *Dixie Glass Co.* v. *Pollak* (Tex. Civ. App. 1960), 341 S.W. 2d 530, 91 A.L.R. 2d 662.

Here, the jury determined that the conduct of McCracken did not justify his discharge as consultant. We will not disturb that determination.

OPIC next contends that it was entitled to set-off against any claim of McCracken, the amount earned or which could have been earned by him through reasonable effort during the remainder of the employment contract. OPIC bases its contention as to the damages awarded solely upon its construction of the contract that McCracken was required to devote his "full time and attention" to the performance of his duties as consultant.

The construction of the contract asserted by OPIC is misplaced. The "full time" requirement applied to McCracken's duties as President and Executive Director. His duties as consultant are specifically controlled by the portion of the contract requiring McCracken to "remain available as a consultant at the salary * provided."

The measure of damages for wrongful discharge was stated in *Albert Johann & Sons Co., Inc.* v. *Echols* (1968), 143 Ind. App. 122, at 129, 238 N.E. 2d 685, at 689 (transfer denied), as follows:

> "The appellant has correctly stated the general rule for the determination of damages in actions for breach of employment agreements, to wit: where one person holds a contract to perform services for another and the other party wrongfully discharges the employee, then, while said employee may have a cause of action for damages resulting from the wrongful discharge, he may not sit idly by, but must make a reasonable effort to secure other work and any income from such work may be offset against the damages sought. *Township of Haddon School of Sullivan County* v. *Willis* (1936), 209 Ind. 356, 199 N.E. 251."

An exception to the above rule is recognized where the wrongfully discharged employee is not required to devote his entire time to work under the contract. *Albert Johann & Sons Co., Inc.* v. *Echols, supra.*

In the instant case there was evidence from which the jury might have concluded that McCracken could have earned other income and yet have stood ready and able to serve OPIC as consultant.

The judgment of the trial court is affirmed.

Affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 295 N.E.2d 375.