■ In the Matter of the Claim of MARILYN WARSHAW, Appellant. PHILIP Ross, as Industrial Commissioner, Respondent.—Decision affirmed, without costs. No opinion. Sweeney, Kane and Staley, Jr., JJ., concur; Mahoney, P. J., and Herlihy, J., dissent and vote to reverse in the following memorandum by Herlihy, J. Herlihy, J. (dissenting). When the claimant filed for benefits, she put on her claim form that she was not working because of "conflict with woman I had to teach". The employer on April 12, 1976, orally advised the local office that the claimant and another woman had a "personality feud" with lots of yelling and on March 24, 1976 the claimant

was ordered to show that other employee how to do certain work but refused and was fired. The employer's report to the local office (Form LO 11) shows that the claimant's last day of work was March 26, 1976. The claimant in a summary of interview dated April 12, 1976 recited that the coemployee called her names and was insulting and when the claimant had tried to teach her anything she had "refused to listen". The claimant stated that she had advised her supervisor of the situation and sometime after January 1, 1976 had been warned that if she refused to talk to the coemployee she "could" be fired. She further stated in the summary that "sometime around" March 24, 1976 she had written down some information for the coemployee because she (claimant) "wouldn't speak to her". An initial determination was issued April 12, 1976, which advised claimant that she was disqualified because of misconduct arising from a refusal to follow orders "due to personal reasons". The claimant disagreed with the determination and on the form used for that purpose (Form LO 420) the employer's name was set forth under the space entitled "Witnesses and Representative". The hearing notice also listed the employer as a party; however, at the hearing held on May 20, 1976, the claimant was the sole witness and/or party appearing. The claimant testified that she had worked as an administrative assistant involving expediting customer's problems relating to the manufacturing and shipping at the employer's factory and her last day was March 26, 1976; that a new employee was hired in November of 1975 to reduce the claimant's work load and although the claimant was to teach her all job aspects, the employee was immediately hostile; that she tried to overlook the hostility until "she started calling me names and attacked me personally"; and, that some of the names were "dictator, old maid, and things like that". The claimant further testified that she went to her supervisor and complained and as a result the manager "gave her related work so that I didn't have to speak to her." However, the working conditions kept the claimant and the coemployee quite close physically and the coemployee continued to insult the claimant. In March, 1976, the supervisor asked claimant to teach the coemployee something else, but the claimant testified she refused and told her supervisor that she "could not teach this woman, whereupon she [supervisor] told me to get out." The coemployee overheard the conversation and told the supervisor "that there is nothing further to teach" and in response the supervisor said to claimant, "I want you to write this information down." *The claimant further testified that she did comply with those instructions and the information was then given by the supervisor to the coemployee,* but on Friday claimant was discharged. The claimant told the referee that after she had first told the supervisor of the hostility and the work was changed so claimant did not teach the coemployee, things were "somewhat quiet, moderately quiet", but claimant was uneasy. The claimant concluded her testimony by asserting that prior to the hiring of the coemployee she felt her supervisor did not "like" her and prior to hiring the coemployee "I know that she put an ad in way before to try to replace me." The referee found that the claimant and the coemployee had a "definite personality conflict"; that in response to claimant's complaint the coemployee was given "other work so that her contact with claimant was minimal"; that on the last day of employment the claimant refused an order to teach the coemployee "some aspect of the work"; and, that when claimant made it clear she would not teach the work, the claimant was discharged. The referee concluded in his opinion that the claimant: "Did not have a valid or compelling reason for refusing to teach her the work. Claimant's actions in refusing to comply with the direct order

of her supervisor was in willful disregard of the employer's interest and constituted misconduct". Based on his findings, the referee sustained the initial determination and the board adopted the referee finding of fact and opinion. Taking the record as a whole, as extensively set forth hereinabove, there is a failure of substantial evidence to support the finding of misconduct. It is uncontradicted that the coemployee went far beyond the display of an attitude of dislike for claimant and actually engaged in calling the claimant derogatory names such as "old maid". The nature of the coemployee's actions is corroborated by the oral report of the employer on April 12, 1976 to the local office interviewer as a "lot of yelling, etc.". It was undisputed that the coemployee refused to listen to the claimant as a teacher and that following the disclosure by claimant to the supervisor of the hostility and refusal by the coemployee to be a student or otherwise accept instruction from claimant, the employer terminated the instructional aspect of claimant's relationship with the coemployee. Under such circumstances the final order of the supervisor to again instruct the coemployee was of doubtful reasonableness. Finally, it is undisputed that although the claimant at first refused to orally instruct the coemployee, the coemployee also immediately advised the supervisor that she [coemployee] had nothing further to learn and the supervisor changed the order to one to write out the information and claimant complied. There is no showing that the claimant was discharged at the time of the refusal or that she was told that the written information would not be a satisfactory compliance. As this record stands, there is no evidence that the refusal to teach the coemployee was simply because claimant "did not get along with this person" and the decision appealed from does not otherwise contain facts sufficient to show a "willful" or deliberate refusal to obey an order of the supervisor. It is well established that while a refusal to obey an order of the employer might constitute cause for dismissal of an employee, not every such event necessarily constitutes a disqualifying misconduct (cf. *Matter of De Grego [Levine]*, 39 NY2d 180). The claimant's version of the events was uncontradicted and there appears to be no reason why her supervisor or coemployee was not produced if the respondent or referee doubted her testimony. The record as a whole does not constitute substantial evidence that the order was reasonable or necessary and, further, that there was in fact a final refusal of an order or that such refusal as did occur was so willful or deliberate as to be insubordination (see *Matter of Raven [Levine]*, 40 AD2d 128, 130). The decision should be reversed and the matter remitted to the Unemployment Insurance Appeal Board for further proceedings.