Jengis YOLDASH, Appellant-Claimant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, Wm. H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and Hammond Water Works, Appellees-Employer.

No. 2–482A108.

Court of Appeals of Indiana, First District.

Aug. 5, 1982.

Scott I. King, Cohen & Thiros, Merrillville, for appellant-claimant.

Linley E. Pearson, Atty. Gen., Indianapolis, George Kohl, Jacquelyn M. Kohl, Hammond, for appellee Hammond Water Works.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Jengis Yoldash appeals from the denial of his claim for unemployment compensation benefits by the Review Board of the Indiana Employment Security Division (Review Board).[1] We affirm.

## STATEMENT OF FACTS

The Review Board found, and the evidence reveals, that on April 23, 1981, a valve stem on a sluice gate to one of Hammond Water Works' mixing basins was bent and damaged. It was determined that Yoldash and one Norton, Yoldash's immediate superior, had bent the valve in attempting to close it. Neither Norton nor Yoldash were supposed to open, close, or adjust such valves. Norton was suspended for one day for such violation, and Yoldash, because he had a previous one day suspension for sleeping on the job, received a three day suspension. Yoldash became enraged and called the managing engineer a "communist" and "fascist," called the maintenance foreman a drunk, and cursed the mechanical foreman. Yoldash was discharged for insubordination as a result of this incident.

Yoldash contends his outburst was excusable because he felt he was treated unjustly since he received a greater period of suspension than Norton and because he was disciplined for carrying out the orders of his immediate superior.

## ISSUE

The sole issue presented for our review, which we have restated, is:

Was the Review Board warranted in finding Yoldash's abusive language addressed to his employer's supervisory personnel sufficient to constitute just cause for discharge thereby rendering him ineligible for unemployment compensation benefits?

## DISCUSSION AND DECISION

Generally, as to all questions of fact, the Review Board's decision is conclusive and binding. *Tauteris v. Review Board of Indiana Employment Security*, (1980) Ind.App., 409 N.E.2d 1192; *Ervin v. Review Board of Indiana Employment Security*, (1977) 173 Ind.App. 592, 364 N.E.2d 1189. We do not reweigh the evidence; rather we examine only that evidence and reasonable inferences therefrom which support the Review Board's decision. *Tauteris; Ervin.* The decision of the Review Board will not be disturbed unless reasonable persons would be bound to reach a different conclusion, on the record, from that reached by the Review Board. *Ryba v. Review Board of Indiana Employment Security*, (1982) Ind.App., 435 N.E.2d 78; *Carter Industrial Services, Inc. v. Review Board of Indiana Employment Security*, (1982) Ind.App., 429 N.E.2d 677; *Jean v. Review Board of Indiana Employment Security*, (1981) Ind.App., 429 N.E.2d 4; *Ervin.*

With the foregoing standards of appellate review in mind, we turn to the question of discharge for just cause as a disqualification for unemployment compensation benefits. The applicable statutory provision reads:

" 'Discharge for just cause' as used in this section is defined to include but not be limited to separation initiated by an employer for falsification of an employ-

---

1. Yoldash's application originally was denied by the deputy. He requested a hearing before a referee which also resulted in a denial of his claim on the ground he was discharged for just cause. On appeal from the referee, the Review Board adopted the referee's findings and denied benefits.

We note further that the Review Board did not file a brief, but merely adopted the employer's brief.

ment application to obtain employment through subterfuge; knowing violation of a reasonable and uniformly enforced rule of an employer; unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness; damaging the employer's property through wilful negligence; refusing to obey instructions; reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours; conduct endangering safety of self or coworkers; incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed employer by an employee."

West's AIC § 22–4–15–1.

In construing this provision of the statute, this court has said:

"Determination of just cause is a question of fact. [Citation omitted.] It is conduct evidencing such wilful or wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or a *carelessness or negligence of such a degree or recurrence* as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional or substantial disregard of the employer's interest, or of the employee's duties or obligation to his employer." (Citation omitted.) (Original emphasis.)

*Wakshlag v. Review Board of Indiana Employment Security,* (1980) Ind.App., 413 N.E.2d 1078, 1082. *Accord Molina v. Review Board of Indiana Employment Security,* (1981) Ind.App., 418 N.E.2d 1198.

No hard and fast rule can be fixed defining in precise terms what constitutes such misconduct as to deny an employee unemployment compensation benefits. *Chrysler Corp. v. Review Board of Indiana Employ-*

*ment Security,* (1962) 134 Ind.App. 1, 185 N.E.2d 25. Each case must be determined on its own particular facts. *Id.* In addition, the definition of "discharge for just cause" is not limited to the specific conduct enumerated in the statute, but also includes any breach of duty in connection with work which is reasonably owed the employer by an employee. *Ervin.*

In *Ervin,* for example, this court held that a male employee who was discharged for making sexual advances to a female employee had breached a duty owed his employer, and upheld a finding by the Review Board of discharge for just cause. Judge Hoffman, writing for the court, stated:

"Reasonable persons could conclude that an employee owes his employer a duty to refrain from making improper sexual advances toward other employees at the employer's place of business. Thus, the Review Board did not err in concluding as a matter of law that Ervin's discharge for improper advances toward a co-employee constituted discharge for just cause within the statutory definition of that term."

173 Ind.App. at 597, 364 N.E.2d at 1192.

The question of whether abusive or offensive language directed at an employer, supervisor, or fellow employee, by an employee can constitute just cause for discharge disqualifying the employee for unemployment compensation has not been dealt with previously in Indiana. Numerous cases in other jurisdictions have spoken to this precise issue.[2] In *Reynolds v. Daniels,* (1981) 1 Ark.App. 262, 614 S.W.2d 525, the claimant, in an argument over wages, called his supervisor a "low down dirty son-of-a-bitch." The Arkansas Court of Appeals defined misconduct as an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standard of behavior which the employer has a right to expect of his employees.[3] The court said

2. This fact seems to have escaped notice by the parties. Yoldash cites no cases in his brief, and the employer cites but one case. Despite the lack of research by the parties, we have researched the question and address it because of its importance.

3. Compare this court's definition of just cause for discharge with that in *Wakshlag v. Review Board of Indiana Employment Security,* (1980) Ind.App., 413 N.E.2d 1078, 1082, previously quoted in this opinion.

there were no Arkansas cases on whether the use of profanity by an employee is misconduct, and continued,

"[t]his question has been considered by courts in other jurisdictions, and those courts have generally denied benefits where the employee directed vulgar or offensive language towards an employer or supervisor. [citations omitted.]

In the facts at bar, the Board of Review found the evidence was sufficient to show claimant's discharge was caused by his willful disregard of standards of behavior that an employer has a right to expect, and we agree. The profanity employed by the claimant was both unprovoked and directed at his immediate supervisor in front and within the hearing of other employees.... We hold the facts in this cause are sufficient as a matter of law to come within the statutory definition of misconduct, and we believe the Board of Review was correct in its denial of benefits to claimant on this issue."

614 S.W.2d at 526.

Other cases supporting the view that abusive and profane language directed towards the employer by an employee amounts to misconduct sufficient to disqualify the employee from unemployment compensation benefits are *Olsgard v. Industrial Commission*, (1976) 190 Colo. 472, 548 P.2d 910 (claimant denied pay for day missed from work because of illness told employer the next time he got sick he was "going to puke right in [the owner's] face"); *Ortiz v. Armour & Co.*, (1979) 100 Idaho 363, 597 P.2d 606 (claimant yelled obscenities in employer's ear); *Rankin v. Doyal*, (1969) La.App., 223 So.2d 214 (claimant refused to follow order and directed "abusive, vulgar, and indecent language" to foreman. This was the second such incident); *Jackson v. Brown*, (1961) La.App., 136 So.2d 329 (vociferous use of abusive language towards foreman and threat to employer in presence of other employees); *Fruehauf Division, Fruehauf Corp. v. Armstrong*, (1981) Mo.App.,

620 S.W.2d 67 (abusive and obscene language disrupting the orderly conduct of employer's business); *Mitchell v. Lovington Good Samaritan Center, Inc.*, (1976) 89 N.M. 575, 555 P.2d 696 (claimant, who had previous history of insubordination, called her supervisor and the director of employer "birdbrain." Upheld under "last straw" doctrine); *Dodson v. Unemployment Compensation Board of Review*, (1981) —— Pa. Cmwlth. ——, 437 A.2d 1080 (claimant said to her supervisor after reviewing written performance evaluation "this is a bunch of shit," and further said, "not on your ass will I resign."); *Alderman v. Unemployment Compensation Board of Review*, (1981) 62 Pa.Cmwlth. 10, 434 A.2d 902 (loud, obscene, and abusive language to supervisor); *Miller v. Unemployment Compensation Board of Review*, (1961) 196 Pa.Super. 393, 175 A.2d 119 (plaintiff, who had been drinking, engaged employer in an argument over vacation pay and used abusive and profane language); *Fetherson v. Unemployment Compensation Board of Review*, (1961) 196 Pa.Super. 498, 174 A.2d 880 (using obscene language to supervisor in presence of other employees); *American Bag and Paper Company v. Unemployment Compensation Board of Review*, (1957) 184 Pa.Super. 292, 132 A.2d 765 (claimant stopped machine in defiance of instructions, used abusive and unprintable language to supervisor, and said she'd stop her machine whenever necessary).

On the other hand, cases have found such incidents not to constitute misconduct, notably where it was a single, isolated instance of loss of temper, particularly if there was some provocation or justification, and if the language was not especially vituperative. In *Silva v. Nelson*, (1973) 31 Cal.App.3d 136, 106 Cal.Rptr. 908, the claimant, who was known by his employer, and who was being trained for a new job, left work early because of emotional pressure. When spoken to the next day by his employer, he became very defensive and said "he didn't give a shit about the job." The court said that "to

result in a 'misconduct' disqualification in an isolated instance of insolence, it must be shown that the employee's act (or statement) was a substantial breach of an employee's duties, deliberately performed or performed in willful and wanton disregard of those duties and of his employer's interests." 106 Cal.Rptr. at 911. The court held the incident fell within the category of a mere mistake or error in judgment, or "minor peccadillo" which was not disqualifying.

Other cases finding no misconduct sufficient to be disqualifying are *Phills v. Doyal,* (1974) La.App., 291 So.2d 444 (claimant told plant superintendant "in an unlady like manner" what he could do with a buzzer which signified end of lunch break; *Raven v. Levine,* (1972) 40 A.D.2d 128, 338 N.Y. S.2d 183 (isolated instance of petty irritability on part of both employee and supervisor not disqualifying); *Hahn Machinery Corp. v. Unemployment Compensation Board of Review,* (1978) 39 Pa.Cmwlth. 365, 395 A.2d 651 (claimant had "loud and boisterous" words with his employer after being reprimanded for poor work); *Horace W. Longacre, Inc. v. Unemployment Compensation Board of Review,* (1973) 12 Pa.Cmwlth. 176, 316 A.2d 110 (when foreman grabbed her as she was leaving for a legitimate work break and told her to do extra work, claimant told foreman to "go to hell").

Yoldash would describe his alleged offensive conduct as coming within the single isolated instance of insolence category, or as justified because he felt he was unfairly treated, and thus not disqualifying. It has been said that although there is some authority that a single instance of profanity or vulgarity may be sufficient to disqualify for unemployment benefits a claimant discharged because of such incident, in most of the cases wherein compensation was denied there was a combination of factors resulting in denial of which the offensive language was but one. Annot., "Use of Vulgar or Profane Language as a Bar to Claim for Unemployment Compensation," 92 A.L. R.3d 106, 110 (1979). *See Miller* where although court found there were other acts of misconduct it was stated that the single instance of use of offensive language to a

superior would be sufficient misconduct to disqualify claimant from receiving benefits; and *Dodson* stating that a single instance of vulgarity "may constitute willful misconduct where the vulgarity is unjustified, unprovoked, unnecessary or uncalled for under the circumstances," 437 A.2d at 1082; and *Alderman* holding that a single instance of unprovoked obscene and vulgar language may render a claimant ineligible.

It has been suggested that among the factors to be considered in determining whether the use of offensive language is sufficient misconduct to constitute just cause for denial of benefits are the quantity of vulgar or profane language, *i.e.,* whether multiple incidents, lengthy barrage, or a single, brief incident; the degree of severity of the words used; use of the language in the presence of other employees; whether language was directed to a supervisor or to other persons. 92 A.L.R.3d 106, 112–25. None of these considerations are conclusive or determinative, and as was said in *Chrysler,* there are no hard and fast rules and each case must be determined from its own peculiar facts.

Here, an employee who had been previously suspended for sleeping on the job, was found to have damaged his employer's property by engaging in forbidden activity. When disciplined for this impropriety, he became enraged, and in the presence of other persons, directed abusive and offensive language towards superiors, using such epithets as "drunk," "suck-ass," "communist," and "fascist." While perhaps not profane and obscene as in some of the cases previously cited, the words certainly could be found to be offensive and abusive and to be in violation of "standards of behavior which the employer had a right to expect of his employee[.]" *Wakshlag; Molina.* Given the standard of review imposed upon us by *Ryba, Carter Industrial Services, Jean,* and *Ervin,* we cannot say that reasonable persons could not have arrived at the same conclusion as the record here as did the Review Board. We hold, therefore, that the Review Board was justified in determining that Yoldash was discharged for

315

just cause within the meaning of the statute because of his outburst of abusive and offensive language directed towards his superiors under the facts and circumstances in this case.

Judgment affirmed.

NEAL, and ROBERTSON, JJ., concur.