**KOKOMO CENTER TOWNSHIP CONSOLIDATED SCHOOL CORPORATION, Appellant–Defendant,**

v.

**James A. McQUEARY, Appellee–Plaintiff.**

No. 34A02–9608–CV–514.

Court of Appeals of Indiana.

July 9, 1997.

---

as a matter of law and therefore summary judgment should have been granted.

We reverse and remand.

## FACTS

McQueary, a school bus driver, filed suit against the School on May 1, 1995, claiming that the school breached his employment contract when it terminated his employment before the expiration of his written contract. McQueary's termination stemmed from an incident involving McQueary, McFarren Wright ("Wright"), another school bus driver, and Liz McDorman ("McDorman"), the transportation supervisor for the School, which occurred on January 23, 1995. On that day, McQueary had complained to McDorman that Wright had improperly dropped off his students in front of McQueary's bus. After McDorman spoke to Wright, Wright approached McQueary in the parking lot and told McQueary to discuss any problems with him directly instead of involving McDorman. McQueary became angry and told Wright to get off his bus or he would "put him under." R. 104. After Wright departed, McQueary went to see McDorman about his confrontation with Wright. During this meeting, McQueary yelled that McDorman "better get that black son of a bitch off my back or I'll put him under." R. 76. This statement was made in front of McDorman's secretary, a five year old African–American student, and an African–American bus aide. McQueary was subsequently discharged on March 6, 1995, effective January 26, 1995.[1]

On May 14, 1996, the School filed its motion for summary judgment. McQueary failed to respond to this motion. A hearing was held on the motion on June 28, 1996, with both parties present. During the hearing, McQueary admitted that he had made the statements asserted by the School, but argued that whether these statements constituted cause for his termination was a question of disputed fact. The School argued that because McQueary had failed to designate facts which created a genuine issue of

Thomas E. Wheeler, II, Kightlinger & Gray, Indianapolis, for appellant-defendant.

Rodney V. Shrock, Kokomo, for appellee-plaintiff.

## OPINION

GARRARD, Judge.

Kokomo Center Township Consolidated School Corporation ("School") appeals the trial court's denial of its motion for summary judgment, claiming that James McQueary ("McQueary") had been discharged for cause

1. McQueary does not make any due process claims, but instead only claims that the School breached his employment contract by terminating it before the end of its term.

material fact, the facts were deemed admitted. On July 16, 1996, the trial court denied the School's motion for summary judgment. At the request of the School, the trial court certified its order for interlocutory appeal pursuant to Indiana Appellate Rule 4(B)(6) and on September 3, 1996, we accepted the School's interlocutory appeal.

## ISSUE

I. Whether the trial court erred by denying the School's motion for summary judgment.

## DISCUSSION

 We stand in the same shoes as the trial court in our review of the trial court's denial of the School's motion for summary judgment. *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, affidavits, and testimony show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *United Farm Bureau Mutual Insurance Co. v. Schult*, 602 N.E.2d 173, 174 (Ind.Ct.App.1992), *reh'g denied*. The non-moving party is required by Indiana Trial Rule 56(C) to specifically designate the material upon which it relies to combat the motion for summary judgment. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 n. 2 (Ind.1993). A party may not orally designate evidence if the party's brief does not contain a citation to the oral designation. *Terrell v. Rowsey*, 647 N.E.2d 662, 666 (Ind. Ct.App.1995), *trans. denied.*

 In addition to failing to respond to the motion for summary judgment, McQueary failed to file an appellee's brief in the present appeal. When an appellee fails to file a brief on appeal, we may reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *Stephens v. Stephens*, 646 N.E.2d 682, 684 (Ind.Ct.App.1995). "This rule is not for the benefit of the appellant. It was established for the protection of the court so that the court might be relieved of the burden of controverting the arguments advanced for a reversal where such a burden rests with the

appellee." *Id.* "Prima facie error is error appearing at first sight, on first appearance, or on the face of the argument." *In re Marriage of Holley*, 659 N.E.2d 581, 583 (Ind.Ct. App.1995), *trans. denied* (emphasis in original).

 In the present action, the facts are not in dispute. McQueary admitted at the hearing on the summary judgment motion and at the hearing before the School Board that he made the statements which the School relied upon when terminating his employment. Further, McQueary failed to designate any evidence in opposition to the summary judgment motion. We are precluded from finding genuine issues of fact when evidence of disputed fact has not been specifically designated to the trial court. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). An employment contract for a definite term can be terminated for cause before the expiration of that term. *Rochester Capital Leasing Corp. v. McCracken*, 156 Ind.App. 128, 295 N.E.2d 375, 378 (1973). "Where the facts are undisputed, the evidence may be such as to justify discharge as a matter of law." *Id.* Because the facts are undisputed, the sole issue before us is whether McQueary's statements constituted cause to terminate his employment as a matter of law.

The School claims, and we agree, that McQueary's statements to Wright and McDorman were abusive and a threat on Wright's life. The School contends that the abusive language alone or the threat to kill alone were sufficient cause to terminate McQueary's employment. In *Stoner v. Review Bd. of Indiana*, 571 N.E.2d 296 (Ind. 1991), our supreme court held that one incident of abusive language by an employee was cause for his discharge. And in *Yoldash v. Review Bd. of Ind. Emp. Sec. Div.*, 438 N.E.2d 310, 314–5 (Ind.Ct.App.1982), we held that an outburst of abusive language towards fellow employees constituted cause for discharge. McQueary's statements that he would put Wright under and commanding McDorman to "get that black son of a bitch off my back" are clearly abusive language much like the language in *Stoner* and *Yoldash*.

We also agree with the School that McQueary's statement that he would "put Wright under" was a threat to kill Wright. While we have been unable to find any Indiana case law concerning threats to kill as cause for termination, we find *Koepplin v. Zortman Mining, Inc.,* 267 Mont. 53, 881 P.2d 1306 (1994) persuasive. In *Koepplin,* an employee told a supervisor investigating his behavior that he was about to "take a short trip to hell." The Montana Supreme Court, quite understandably, reasoned that this was a threat to kill the fellow employee and that this was cause for discharge. Much like the Montana Supreme Court, we believe that a threat to kill may be cause for termination. Because the facts in the present case are undisputed, we hold that as a matter of law McQueary's abusive and threatening statements were cause to terminate his employment.[2] The trial court's denial of the School's motion for summary judgment is therefore reversed and we remand this cause to the trial court with instructions to enter summary judgment in favor of the School.

Reversed and remanded with instructions.

KIRSCH, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion and would affirm the trial court for the following reasons:

1. Here we are dealing with a written employment contract which is in contrast with the employee at will cases cited by the Majority.

2. The Majority defines and interprets the slang phrase "put Wright under" as an obvious threat to kill with total disregard of the circumstances under which the slang expression was used. As Justice Holmes emphasized in *Towne v. Eisner:* "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918) (citing *Lamar v. United States,* 240 U.S. 60, 65, 36 S.Ct. 255, 256–57, 60 L.Ed. 526 (1916)). McQueary had twice sought the assistance of the transportation supervisor, McDorman, to remedy the hazardous situation caused by Wright exposing children to danger in leaving them off in front of McQueary's bus. When Wright confronted McQueary about complaining to the supervisor, McQueary again sought the assistance of the supervisor, McDorman, by going to the supervisor's office to register his displeasure with Wright's conduct. McQueary's conduct of seeking the assistance of the transportation supervisor can hardly be interpreted as a threat to kill. His conduct was not threatening, it was an attempt to peaceably seek help through administrative channels. In his attempt to express his displeasure with Wright, McQueary used a slang expression for which none of the American dictionaries have an available definition. DICTIONARY OF SLANG AND UNCONVENTIONAL ENGLISH (5th ed.1961). Before the subjective intent of a declarant is given an interpretative meaning, the surrounding circumstances and the conduct of the declarant must be taken into account. McQueary's expression "put Wright under" was merely an expression of desperation with the contentious conduct of Wright who had instructed McQueary to come directly to him rather than the transportation supervisor. It was Wright who was spoiling McQueary's attempts at a peaceable settlement. It was Wright who demanded that McQueary see him in the future rather than complain to the supervisor. Yet, the Majority interprets McQueary's words as a threat to kill—a conclusion that cannot stand under the circumstances.

3. Even if the authority cited by the Majority did not concern employees

---

2. We explicitly limit this holding to the facts of the present case.

at will as previously observed, the expressions at issue in those cases are much easier to interpret. For example, in *Stoner v. Review Bd. of Indiana*, 571 N.E.2d 296 (Ind.1991), the regional manager, purposely in a loud voice so that the other employees could hear his remark, stated that CD was a "slut" and that she would "slut around on company time." A "slut" is defined by WEBSTER'S DICTIONARY (1992) as "a woman of loose character; hussy." The circumstances and timing of the remarks leave little doubt as to the intent and purpose of the regional manager. It was to humiliate and slander. Another example cited by the Majority is *Yoldash v. Review Bd. of Ind. Emp. Sec. Div.*, 438 N.E.2d 310 (Ind.Ct.App. 1982). Yoldash called the managing engineer a "communist" and a "fascist," two terms definable by authority available to everyone. Additionally, Yoldash called the maintenance foreman a drunk, which is commonly defined as a person who is an alcoholic. These are widely used terms well known to most persons. A refined definition is readily available for those persons who wish to inquire. Here again the circumstances and timing add to the meaning. Yoldash had been suspended for three days for helping his supervisor turn off a valve while the supervisor received only one day suspension. Yoldash felt that he had been treated unfairly. Likewise, in *Reynolds v. Daniels*, 1 Ark.App. 262, 614 S.W.2d 525 (1981), an Arkansas case cited by the Majority, an employee at will used the term "bitch." WEBSTER defines a "bitch" as follows: "Slang wench; hussy; an abusive epithet, often implying lewdness.—v.i. Slang to complain;—to bitch up, Slang to botch." The circumstances here as

well as the timing add additional meaning to the expression.[3]

I would affirm the trial court for the above reasons. McQueary's subjective intent is a question of fact that must be determined by the fact finder—not by the court of appeals. The trial court was correct in denying the motion for summary judgment and should be affirmed.

---

**3.** The term "son of a bitch" has other meanings as well. It may be abusive or affectionate when used to address a person. It can often be used to describe something difficult or a difficult person. For example: It is an oil field term for an emergency car for escaping from a derrick. BERREY AND VAN DEN BARK, THE AMERICAN THESAURUS OF SLANG 488 (1942); Hog's back son of a bitch is boiled salt codfish covered with scraps of pork. WENTWORTH, AMERICAN DIALECT DICTIONARY 579 (1945). Son-of-bitch stew is a favorite cowboy dish made of brains, sweetbreads and choice pieces of freshly killed calf. ADAMS, WESTERN WORDS 149 (1945).