## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 10 2019, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

V.T.
Gary, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

V.T.,

*Appellant-Claimant,*

v.

Review Board of the Indiana Department of Workforce Development,

*Appellee-Respondent.*

December 10, 2019

Court of Appeals Case No. 19A-EX-1233

Appeal from the Review Board of the Indiana Department of Workforce Development

The Honorable Steven F. Bier, Chairperson

The Honorable Lawrence A. Dailey, Member

The Honorable Conny Franken, Administrative Law Judge

Case No. 19-R-0354

**Friedlander, Senior Judge.**

[1] V.T., pro se, appeals the decision of the Indiana Department of Workforce Development Unemployment Insurance Review Board (Review Board) affirming the finding by the Administrative Law Judge (ALJ) that V.T. was discharged from her employment for good cause, thereby terminating her unemployment benefits. Concluding that the ALJ's findings are supported by the evidence, we affirm the Review Board's decision.

[2] The sole issue in this appeal is whether the ALJ's finding that V.T. was discharged for good cause is supported by the evidence.

[3] The Indiana Unemployment Compensation Act is codified at Indiana Code article 22-4 and provides benefits to those who are out of work through no fault of their own. To be eligible for benefits, an individual must meet the requirements set forth in Chapter 22-4-14. Unemployment insurance benefits, however, are not an unqualified right and may be denied to claimants who are disqualified by any of the various exceptions provided in Chapter 22-4-15. Specifically, an individual is disqualified if discharged for "just cause." *See* Ind. Code § 22-4-15-1(d) (2017). Just cause includes a knowing violation of a reasonable and uniformly enforced rule and any breach of duty in connection with work which is reasonably owed an employer by an employee. *See* Ind. Code 22-4-15-1(d)(2), (9).

[4] An ALJ for the Indiana Department of Workforce Development set out the facts and procedural history relevant to V.T.'s appeal as follows:

[V.T.] began employment in March 2010 and was discharged for improper conduct in the workplace effective January 24, 2019. [V.T.] worked for [    ] (Employer) as a licensed practical nurse (LPN) who earned $24.66 per hour. The employer is a long term health care facility.

The employer has a handbook. One policy in the handbook reads, "3. Engaging in abusive, discourteous, profane, indecent, or unprofessional language or conduct while on duty or on facility property." Under Disciplinary Guidelines it reads, in part, "Incidents of unacceptable behavior are handled by the facility on an individual case by case basis. Depending on such factors as the seriousness of the offense, the impact of the offense on residents, fellow employees, and/or the facility, the employee's prior work and disciplinary record and the presence or absence of mitigating or aggravating circumstances, an employee may be given a verbal warning, a written warning, a final warning, a suspension without pay or may be discharged."

The employer provided a copy of the handbook to [V.T.]. The policy applies to all employees. The purpose of the policy is to protect the residents from harm. Discipline is contingent upon the severity of the incident and the aforementioned factors.

On January 24, 2019 [V.T.] entered the room of an alert, oriented resident and said mother fu[  ]er. There was another nurse in the room, a certified nursing aide, and an employee from the Department of Health. The employee was a member of the team who conducted an audit of the employer's facility. Everyone heard [V.T.] including the resident. The nurse reported the incident to Ms. Navarro [the administrator of the facility]. The nurse, certified nursing aide and the employee from the Department of Health were interviewed. All of them said that [V.T.] uttered the term upon entering the room but no one thought that [V.T.] aimed it at the resident. The employer interviewed [V.T.] who said she said the words but it was not

intended for the resident. Ms. Navarro suspended [V.T.] from employment.

The employer concluded that [V.T.] violated policy and discharged her effective January 24, 2019.

Appellant's App. Vol. 2, pp. 3-4.

[5] Thereafter, V.T. filed a claim for unemployment benefits, which was initially granted by a claims investigator. V.T.'s employer appealed that decision, and the ALJ conducted a telephonic hearing in which the employer and its witnesses participated. V.T. did not appear for the hearing. Following the hearing, the ALJ concluded as follows:

> [V.T.] had a duty to be professional at work. The duty is reasonably connected to the work and reasonably owed to the employer. [V.T.]'s conduct was a reflection upon the employer. On January 24, 2019 [V.T.] uttered a severe profanity while entering a resident's room. A coworker, subordinate, a visitor and the resident heard [V.T.]. [V.T.]'s utterance would impact the employer's reputation as well as impact [V.T.]'s relationships with the individuals in the room. This single incident demonstrated a substantial disregard for the employer's and resident's interests. [V.T.] breached the duty. [V.T.] was discharged for just cause. [V.T.] is ineligible for benefits under the Act.

*Id.* at 5. Accordingly, the ALJ reversed the determination of the claims investigator. V.T. appealed that decision to the Review Board, which adopted the ALJ's findings and conclusions and affirmed the ALJ's decision without a hearing. This appeal ensued.

[6] We first note that V.T. is proceeding pro se. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Lowrance v. State*, 64 N.E.3d 935 (Ind. Ct. App. 2016), *trans. denied*. This means that they must follow the established rules of procedure and accept the consequences when they fail to do so. *Id.*

[7] Next, we turn to the standard of review. Decisions of the Review Board are conclusive and binding as to all questions of fact. Ind. Code § 22-4-17-12(a) (1995). The Board's conclusions of law may be challenged as to "the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts." Ind. Code § 22-4-17-12(f). Under this standard, (1) the Review Board's findings of basic fact are reviewed for substantial evidence, (2) findings of mixed questions of law and fact (i.e., ultimate facts) are reviewed for reasonableness, and (3) legal propositions are reviewed for correctness. *K.S. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 33 N.E.3d 1195 (Ind. Ct. App. 2015). This Court neither reweighs the evidence nor assesses witness credibility, and it considers only the evidence most favorable to the Review Board's findings. *Id.* Further, this Court will reverse the Review Board's decision only if there is no substantial evidence to support the Board's findings. *J.M. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283 (Ind. 2012).

[8] Although, as set forth above, V.T. was discharged by her employer under policy number 3 in the employee handbook, the ALJ found the policy to be a "guideline" rather than a rule under which an employee could be discharged for

just cause pursuant to Indiana Code section 22-4-15-1(d)(2). Appellant's App. Vol. 2, p. 4. The ALJ instead based her determination on a breach of duty by V.T. pursuant to Section 22-4-15-1(d)(9). Specifically, the ALJ determined that V.T. was discharged for just cause based upon her breach of her duty to be professional at work.

[9] The only discernible argument in V.T.'s brief is that the decision of the ALJ was not based on the evidence presented by V.T.'s employer. *See* Appellant's Br. p. 9. In support of this argument, she claims that her employer presented "flimsy evidence and inconsistencies." *Id.* at 10.

[10] V.T. failed to appear for the telephonic hearing. At the hearing, V.T.'s employer presented the testimony of the facility's director of nursing and its administrator. Evidence was presented as to V.T.'s use of profanity on January 24, 2019 in the presence of a resident, a staff nurse, a certified nursing assistant, and a representative from the Indiana State Department of Health. When confronted, V.T. confirmed that she had used profanity and that she knew it was improper. In accordance with the employer's policy, the director of nursing obtained a statement from V.T., and, upon receiving the statement, the director informed V.T. that she was suspended pending investigation. In addition, the evidence showed that employees receive an employee handbook when they are hired and sign a form acknowledging receipt thereof. V.T.'s employer had an acknowledgment form signed by V.T.

Approximately one and one-half to two weeks after the incident, V.T. called the director of nursing, at which time the director informed V.T. that the investigation was complete and that the employer was discharging her for violating policy by using profanity in the presence of a resident. V.T.'s employer chose to discharge her rather than issue a warning because the incident involved a resident and because V.T. had had other disciplinary actions in the past; however, V.T. could have been discharged solely for this incident. The evidence further showed that the facility was issued a citation for this incident.

In *Yoldash v. Review Board*, an employee was discharged for insubordination when he became enraged and called his manager and another employee names in response to being punished for a rule violation. 438 N.E.2d 310 (Ind. Ct. App. 1982). The Court held that the employer discharged the employee for just cause and stated that, while the words of the employee were not necessarily obscene or profane, they could be considered offensive and abusive and in violation of the standards of behavior the employer had a right to expect of its employees. *Yoldash* set forth several factors to be considered in determining whether the use of offensive language is sufficient to constitute just cause, including the quantity (i.e., number of incidents, lengthy barrage, or single, brief incident) of vulgar or profane language, degree of severity of words used, use of the language in the presence of other employees, and whether the language was directed to a supervisor or to other persons. *Id.* The Court cautioned that none of these considerations is conclusive or determinative and that the

determination is fact-sensitive and thus must be made on a case-by-case basis. *Id.*

[13] Here, V.T., who had prior disciplinary actions, entered a resident's room and uttered the words "this mother-f**ker." Tr. Vol. 2, p. 9. V.T.'s profanity was heard by the resident, two co-workers, and a representative from the Department of Health. Although apparently not directed at anyone in the room, the language V.T. used is obscene, profane, and extremely offensive. V.T. had received a copy of the employee handbook, which sets forth the employer's expectation that its employees will conform their conduct to the highest standards of professionalism as well as the employer's policy against such unacceptable behavior as engaging in abusive, discourteous, profane, indecent, or unprofessional language or conduct. V.T.'s use of profanity in this instance is sufficient to constitute just cause.

[14] The ALJ's findings of fact and conclusions of law, which the Review Board adopted, are supported by substantial evidence of probative value in the record.

[15] Judgment affirmed.

Bailey, J., and May, J., concur.