FOR PUBLICATION

ATTORNEYS FOR APPELLANT
: 
 ATTORNEYS FOR APPELLEES
:

RONALD G. SHEFFER
 
 DAVID K. HERZOG

CARL B. BOYD, JR. BEN W. BLANTON

BRIAN F. HAARA SCOTT D. HIMSEL

Sheffer - Hoffman Baker & Daniels

Henderson, Kentucky Indianapolis, Indiana 

IN THE

COURT OF APPEALS OF INDIANA

DR. CARMEL McENROY, )

)

Appellant-Plaintiff, )

)

vs. ) No.  74A01-9803-CV-123

)

ST. MEINRAD SCHOOL OF THEOLOGY, )

RT. REVEREND TIMOTHY SWEENEY, O.S.B., )

and REVEREND EUGENE HENSELL, O.S.B., )

)

Appellees-Defendants. )

APPEAL FROM THE SPENCER CIRCUIT COURT

The Honorable Wayne A. Roell, Judge

Cause No.  74C01-9705-CP-193

June 24, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

Appellant-Plaintiff Dr. Carmel McEnroy ("Dr. McEnroy") filed an action against St. Meinrad School of Theology, Reverend Timothy Sweeney, and Reverend Eugene Hensell (collectively referred to as "Defendants"), asserting breach of contract, tortious interference with contractual relations and breach of an implied covenant of good faith and fair dealing.  Defendants responded by filing a motion to dismiss for lack of subject matter jurisdiction, asserting that resolution of this action would excessively entangle the court in religious matters in violation of the First Amendment.  The trial court granted Defendants' motion.  Dr. McEnroy raises four issues for our review, which we consolidate and restate as did the court commit reversible error in so doing.  We affirm.
(footnote: 1)  

The facts giving rise to this appeal are these.  Dr. McEnroy was employed as a professor of Catholic theology and doctrine at Saint Meinrad School of Theology ("Saint Meinrad").  Saint Meinrad is a Catholic Seminary which serves to train candidates for the priesthood and other ministries of the Roman Catholic Church.  At all times relevant to this action, the archabbot of St. Meinrad Archabbey was Father Timothy Sweeney ("Archabbot Sweeney").  Father Eugene Hensell ("Father Hensell") was President-Rector of Saint Meinrad. 

In the spring of 1994, Pope John Paul II issued an Apostolic Letter declaring the issue of the ordination of women as priests resolved and no longer open to debate.  Several months after the statement was issued, Dr. McEnroy joined 1,500 others in signing an open letter opposing the Pope's teachings on the subject.  After reading the open letter in the 
National Catholic Reporter
, Archabbot Sweeney determined that Dr. McEnroy had become "seriously deficient" in her duties as a seminary professor by publicly dissenting from the Pope's teachings, and that the Church's canon law required that he remove her from the faculty at Saint Meinrad.  Pursuant to his jurisdiction over Saint Meinrad provided by the Statement of Governance and contained in the 
Faculty Handbook
, Archabbot Sweeney directed Father Hensell to so remove Dr. McEnroy.  He did so and as a result, Dr. McEnroy filed suit against Defendants, asserting breach of contract, intentional interference with contractual relations, and breach of an implied covenant of good faith and fair dealing.
(footnote: 2)  Defendants responded by filing a motion to dismiss pursuant to Ind. Trial Rule 12(B)(1).  The motion argued that the court lacked subject matter jurisdiction "because [resolution of] these claims would require the Court to decide religious issues regarding the Church's good faith motivation and doctrinal basis for removing her under the canon law."  R. at 38.  After a hearing, the trial court granted the motion.  This appeal ensued in due course. 

A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act.  
Tapia v. Heavner
, 648 N.E.2d 1202, 1205 (Ind. Ct. App. 1995).  When confronted with a motion to dismiss based on a lack of subject matter jurisdiction, the trial court must decide upon the complaint, motion and any affidavits or other evidence submitted whether it possesses authority to further adjudicate the action.  
Common Council of City of Hammond v. Matonovich
, 691 N.E.2d 1326, 1328 (Ind. Ct. App. 1998), 
trans. denied
.  Unlike ruling on a motion for summary judgment, the trial court may weigh evidence and resolve factual disputes when ruling on a motion for subject matter jurisdiction.  
Tapia
, 648 N.E.2d at 1205.  Where, as here, the facts are not in dispute, we review the trial court's decision 
de
 
novo
.  
Matonovich
, 691 N.E.2d at 1328.

Citing the Supreme Court's decision in 
Employment Div., Dep't of Human Resources v. Smith
, Dr. McEnroy contends the trial court could avoid violating the First Amendment's prohibition against excessive entanglement by applying neutral principles of contract law. 494 U.S. 872, 110 S. Ct. 1595, 108 L.Ed.2d 876 (1990) (civil courts do not inhibit the free exercise of religion where neutral principle of law may be applied).  Dr. McEnroy premises this contention on the twin assertions that the contract granting her continuing appointment status and the 
Faculty Constitution
 provide the exclusive circumstances under which she may be dismissed, and that the issue may be resolved without reference to either church law or doctrine.  Saint Meinrad counters that Dr. McEnroy's contract also incorporated the terms of the 
Faculty Handbook
, which included the Statement on Governance.  The Statement on Governance in turn "provides that the seminary operates through an hierarchical model in the administration of justice as specified by the Church's canon law and its 
Program of Priestly Formation
 ("PPF"), and that the Archabbot retains direct jurisdiction over Saint Meinrad within that model," including the authority to remove a seminary professor who is determined to be seriously deficient.  R. at 434. 

The Supreme Court has long held that the First Amendment requires civil courts to refrain from interfering in matters of church discipline, faith, practice and religious law.  
Watson v. Jones
, 80 U.S. (13 Wall) 679, 727, 20 L.Ed. 666 (1871).  Thus, civil courts are precluded from resolving disputes involving churches if "resolution of the disputes cannot be made without extensive inquiry . . . into religious law and polity. . . ."  
Serbian Eastern Orthodox Diocese v. Milivojevich
, 426 U.S. 696, 709, 96 S. Ct. 2372, 2380, 49 L.Ed.2d 151 (1976).  Consequently, the First Amendment proscribes intervention by secular courts into many employment decisions made by religious organizations based on religious doctrines or beliefs.  Accordingly, personnel decisions are protected from civil court interference where review by civil courts would require the courts to interpret and apply religious doctrine or ecclesiastical law.  
Milivojevich
, 426 U.S. at 696, 96 S. Ct. at 2372. (review of church's decision to defrock bishop impermissible where resolution required interpretation of internal church procedures).

The contract granting Dr. McEnroy continuing appointment stated, in relevant part,  "[t]he statements on academic freedom and responsibility, on appointment and dismissal contained in the 
Faculty Constitution
 are 
among
 the terms of appointment."  R. at 283 (emphasis added).  Use of the term "among" here creates an ambiguity made evident upon examination of the arguments raised by the parties.  Defendants contend the term implies the existence of additional terms, specifically the 
Faculty Handbook
 and Statement on Governance.  Dr. McEnroy, on the other hand, 
argues that the 
Faculty Constitution
 provide the sole terms of her contract.  At oral argument before this court, Dr. McEnroy stated that the phrase "among the terms of appointment," could not refer to documents not specifically mentioned, and therefore refers to the terms of appointment and dismissal as set forth in the 
Faculty Constitution
.  When confronted with an ambiguous contract, this court attempts to determine the intent of the parties at the time of formation as disclosed by the language used to express the parties' respective rights and duties.  
Barrington Mgmt. Co., Inc. v. Draper Family Ltd.
, 695 N.E.2d 135, 140 (Ind. Ct. App. 1998).  Where, as here, the ambiguity arises from the language employed rather than because of extrinsic facts, its construction is a question of law to be determined by the court.  
I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.
, 695 N.E.2d 1030, 1034 (Ind. Ct. App. 1998), 
trans. denied
.  We will read the contract as a whole and accept an interpretation which harmonizes and gives effect and meaning to the contract's words and phrases.  
Barrington
, 695 N.E.2d at 140. 

Applying these principles to the contract before us, we find that by declaring the statement on academic freedom and responsibility contained in the 
Faculty Constitution
 to be "among the terms of appointment," the parties intended to signify that additional terms were also to apply.  The contract does not state what additional terms were intended to apply or their relation to those contained in the 
Faculty Constitution
.  We observe, however, that the parties agreed before the trial court the 
Faculty Handbook
, which includes among other things the Statement on Governance, was also incorporated into the contract at trial.  In light of the Statement on Governance, resolution of Dr. McEnroy's claims would require the trial court to interpret and apply religious doctrine and ecclesiastical law.  At a minimum, the trial court would have to determine whether:  (1) Archabbot Sweeney properly exercised his jurisdiction over Saint Meinrad, (2) Dr. McEnroy's conduct constituted public dissent or caused her to be "seriously deficient," and (3) canon law required Archabbot Sweeney to remove Dr. Sweeney from her teaching position.  Because the trial court would be clearly and excessively entangled in religious affairs in violation of the First Amendment, we find no error.

Judgment affirmed.

DARDEN, J., concurs.

SULLIVAN, J., concurs in result with opinion.

IN THE

COURT OF APPEALS OF INDIANA

DR. CARMEL McENROY, )

)

Appellant-Plaintiff, )

)

vs. ) No. 74A01-9803-CV-123

)

ST. MEINRAD SCHOOL OF THEOLOGY, )

RT. REVEREND TIMOTHY SWEENEY, O.S.B., )

and REVEREND EUGENE HENSELL, O.S.B., )

)

Appellees-Defendants. )

SULLIVAN, Judge
, 
concurring in result

While it may be patently discriminatory to terminate a tenured faculty member, who happens to be a Catholic, while not permitting termination of a tenured faculty member who embraces a different religious faith, such discrimination is constitutionally protected.

This anomalous and seemingly unjust result is dictated by the interpretation given over the years to the prohibition against the judiciary from “interfering” in matters of religious dogma or discipline.  This prohibition would seem to control even where the discrimination is patent.  It requires us to affirm the finding that a faculty member is rendered unfit to teach solely by dint of her public disagreement with a particular teaching of the Church.
(footnote: 3)  In this case, the teaching is that ordination of women is contrary to moral law as interpreted by the papal encyclical.  Furthermore, our decision is compelled whether or not the divergence of philosophical or theological view is reflected in the classroom.

Dr. McEnroy was terminated because her signature to the public letter, along with that of some fifteen hundred others, rendered her, in the opinion of Archabbot Sweeney, "'seriously deficient' in her duties as a seminary professor."  Slip op. at  3.  I find no evidence permitting even an inference that Dr. McEnroy, by reason of her personal position on the issue, had become less efficient or conscientious in her teaching methods or in the presentation of the classroom subject matter within her duties.  Nevertheless, it was concluded that the Church’s canon law required her removal.

Be that as it may, this case rests upon the proposition that the Church may discipline and sanction its own faithful as it sees fit without regard to concepts of discriminatory conduct which would otherwise be unlawful.  This is deemed an internal hierarchical discipline dispute in which the judiciary may not become involved. 

It is for this reason that we are forbidden to apply common law contractual principles to the matter of Dr. McEnroy’s tenured employment.  It is for this reason that I am compelled to concur.

FOOTNOTES
1: This court heard oral argument on May 18, 1999.

2:  We note that prior to instituting the present action, Dr. McEnroy filed sex discrimination actions based on these same facts with the federal district court and the Equal Employment Opportunity Commission. Both actions were dismissed for lack of jurisdiction.

3:  The factual determinance of Dr. McEnroy's "serious deficiency" and unfitness is premised upon reliance upon a provision of the canon law's Program of Priestly Formation, which states that seminary faculty are to "set forth Catholic doctrine as formulated by the authoritative teaching office of the Church" taken in conjunction with a canon law provision which requires removal of a seminary professor who is "seriously deficient in his or her duty."  Record at 71-72, 434.

An analytical gap appears between the first principle of doctrinal conformance and the second principle relating to deficiency in one's teaching duties unless that area of doctrinal conformity or the lack thereof, in some way impacts the educational communication of subject matter and methodology from the professor to the student.  Stated conversely, unless the professor in the academic setting sets forth a doctrine contrary to that of the Church, it is difficult to ascertain how she is rendered "seriously deficient" in her teaching duties.

In final analysis, the determination necessarily rests upon the rationale that if the Church official says that the professor is deficient in her teaching duties because of a doctrinal dispute unrelated to the classroom, it must be so.