

ATTORNEY FOR APPELLANT

Andrew G. Jones
Law Office of Andrew G. Jones
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Judy L. Woods
Benesch Friedlander Coplan & Aronoff
LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven Matthies, <br> *Appellant-Defendant,* <br><br> v. <br><br> The First Presbyterian Church of Greensburg Indiana, INC., <br> *Appellee-Plaintiff* | April 8, 2015 <br><br> Court of Appeals Case No. 16A01-1409-PL-380 <br><br> Appeal from the Decatur Circuit Court <br> The Honorable Timothy B. Day, Judge <br> Cause No. 16C01-1302-PL-58 |

**Friedlander, Judge.**

[1]     Steven Matthies appeals from the grant of summary judgment in favor of The First Presbyterian Church of Greensburg Indiana, Inc. (First Presbyterian). On appeal, Matthies argues that the trial court erred in granting summary judgment in favor of First Presbyterian.

We affirm.

The Presbyterian Church (U.S.A.) is a national religious denomination governed by its Constitution, which provides for a hierarchical or connectional system of governance wherein each lower governing body is answerable to a successive higher governing body. The Presbytery of Whitewater Valley, Inc. (the Presbytery) is the regional governing body responsible for the mission and governance of the Presbyterian Church in central and northeastern Indiana, including all of Decatur County, where First Presbyterian is located.[1] First Presbyterian is the local church that is ruled by its pastor(s) and ruling elders, who make up the Session, the lowest level of governance for the Presbyterian Church. The Session observes and carries out the instructions of the higher governing bodies, including the Presbytery.

On October 17, 2010, Reverend Steven Matthies was "called" to the office of Designated Pastor for the congregation of First Presbyterian. *Appellant's Appendix* at 72. On that date, Reverend Matthies entered into a Designated Pastor Contract (Contract) that covered a three-year period beginning on October 18, 2010. The "Terms of Call" set forth in the Contract provided that Reverend Matthies would receive a stated salary, housing, and other benefits, including, as pertinent to this case, five weeks of vacation.[2] *Id*. at 13.

---

[1] There are four levels of governance within the Presbyterian Church's hierarchical structure. The Synod is the second level of governance, above the Presbytery, and covers a multi-state area.

[2] The Contract does not expressly indicate that the agreed-upon compensation and benefits were for the entire three-year contract term or to be provided on an annual basis. The parties treat the Terms of Call as setting forth compensation on an annual basis.

[4] In the summer of 2012, the relationship between Reverend Matthies and the First Presbyterian congregation began to deteriorate. First Presbyterian maintained that Reverend Matthies alienated himself from the congregation when he "neglected his pastoral responsibilities" by failing to make himself available for pastoral counseling services, missing scheduled appointments with parishioners, and refusing to keep the Session informed of his whereabouts and activities even after being asked to do so. *Id*. at 65. First Presbyterian maintains that from June 2012 into July 2012, Reverend Matthies "abandoned" his pastoral duties and was absent from church, without informing the Session or obtaining consent to take vacation time. *Id*. at 66. First Presbyterian asserts that by August 2012, Reverend Matthies "failed repeatedly to provide pastoral services to [First Presbyterian] without explanation." *Id*. Reverend Matthies asserts that during the timeframe in question, he utilized two of the five weeks of vacation he was entitled to and that he informed the Session prior thereto. Matthies also asserts that he did not abandon his congregation and lists what his pastoral activities consisted of during his final weeks as the Designated Pastor for First Presbyterian.[3]

[5] The discord between Reverend Matthies and the First Presbyterian congregation escalated to a point where the Presbytery intervened to meet with Reverend Matthies, the Session, and the congregation to attempt to resolve their differences. On July 25, 2012, the Presbytery and its Committee on

---

[3] Reverend Matthies maintains that he met with members of the congregation, attended a funeral, conducted a funeral, led a worship service for a local retirement community, and volunteered at a soup kitchen, among other activities.

Ministry (COM) held a meeting to discuss the ongoing discord. Reverend Matthies left before the meeting concluded and failed to meet further with the Presbytery or the COM.

[6] On August 15, 2012, the Presbytery and its COM held a special meeting to discuss Reverend Matthies's continued pastoral relationship with First Presbyterian. A letter sent to Reverend Matthies that same day informed Reverend Matthies that the COM had unanimously voted to immediately dissolve his pastoral relationship with First Presbyterian, finding that "the pastoral relationship between [Reverend Matthies and First Presbyterian] is no longer viable and needs to be ended in order to prevent further deterioration of the spiritual health of the church." *Id.* at 86. The letter further provided that the COM and First Presbyterian would work with Reverend Matthies to negotiate a fair and equitable severance package, but Reverend Matthies declined such offer. On or about that same day, the COM notified First Presbyterian and its Session of its decision to dissolve Reverend Matthies's pastoral relationship with First Presbyterian.

[7] On February 8, 2013, Reverend Matthies filed his complaint against First Presbyterian, alleging violations of the Indiana Wage Claims Statute and Indiana common law. Reverend Matthies sought compensation for unpaid salary and benefits, including unpaid vacation wages, to which he claims he was entitled pursuant to the Terms of Call set out in the Contract. First Presbyterian filed its answer, affirmative defenses, and counterclaim, seeking a determination that Reverend Matthies breached his obligations and promises to

the congregation by abandoning his pastoral duties. As such, First Presbyterian argues that it was no longer obligated under the Contract to compensate Reverend Matthies for unused vacation time.

[8] On June 12, 2013, First Presbyterian filed a motion for summary judgment, presenting several alternative grounds in support thereof,[4] and Reverend Matthies filed a response in opposition thereto. The trial court held a summary judgment hearing on July 31, 2014. On August 13, 2014, the trial court entered its order granting summary judgment in favor of First Presbyterian. Specifically, the trial court found that to resolve the dispute between the parties would require the court "to interpret and apply religious doctrine or ecclesiastical law," which, the court noted, it is precluded from doing pursuant to the dictates of the First Amendment. *Id.* at 6. Pursuant to Reverend Matthies's request, the trial court modified its order granting summary judgment to include a finding that there is no just reason for delay and directing entry of final judgment on behalf of First Presbyterian with regard to Reverend Matthies's claims for breach of contract and failure to pay earned wages/benefits. Reverend Matthies now appeals.

[9] Summary judgment is appropriate where the moving party shows there are no genuine issues of material fact with respect to a particular issue or claim. Ind.

---

[4] First Presbyterian argued that the trial court was barred from considering Reverend Matthies's claim on constitutional grounds, that Reverend Matthies named the wrong defendant, that the Contract is not an enforceable secular contract, and that the Indiana Wage Claims Statute is inapplicable because First Presbyterian is not an "employer" within the meaning of that statute. First Presbyterian also argued that Reverend Matthies's conduct demonstrated that he abandoned his pastoral responsibilities, thereby relieving First Presbyterian of any obligations under the Contract.

Trial Rule 56(C); *Bleeke v. Lemmon,* 6 N.E.3d 907 (Ind. 2014). We review a summary judgment order *de novo. Hughley v. State,* 15 N.E.3d 1000 (Ind. 2014). Considering only the facts supported by evidence designated to the trial court by the parties, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." T.R. 56(C); *see also TP Orthodontics, Inc. v. Kesling,* 15 N.E.3d 985 (Ind. 2014). Where the moving party designates material demonstrating there are no genuine issues of material fact with respect to a particular issue or claim, the burden shifts to the non-moving party to come forward with designated evidence showing the existence of a genuine issue of material fact. *Bleeke v. Lemmon,* 6 N.E.3d 907.

[10] Upon review, we will accept as true those facts alleged by the nonmoving party. *Sees v. Bank One, Ind., N.A.,* 839 N.E.2d 154 (Ind. 2005). "All designated evidence and reasonable inferences must be construed in favor of the non-moving party, and doubts resolved against the moving party." *Bleeke v. Lemmon,* 6 N.E.3d at 917. The appellant bears the burden of demonstrating that the grant of summary judgment was erroneous. *Hughley v. State,* 15 N.E.3d 1000. Finally, we will affirm a grant of summary judgment on any theory supported by the record. *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.,* 983 N.E.2d 574 (Ind. 2013).

[11] The fundamental right to religious freedom, including the freedom to believe and the freedom to act, is protected by the United States and Indiana Constitutions. *See Cantwell v. Connecticut,* 310 U.S. 296 (1940). The freedom to

believe is absolute, while the freedom to act is subject to regulation for the protection of society. *Id.* In such cases, however, excessive entanglement between church and state occurs where courts are asked to review and interpret a church's constitution, laws, and regulations. *Konkle v. Henson*, 672 N.E.2d 450 (Ind. Ct. App. 1996). To be sure,

> [t]he United States Supreme Court has long held that the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, requires civil courts to refrain from interfering in matters of church discipline, faith, practice, and religious law. *Watson v. Jones*, 80 U.S. 679, 727 (13 Wall.), 20 L.Ed. 666 (1871). Thus, civil courts are precluded from resolving disputes involving churches if "resolution of the disputes cannot be made without extensive inquiry ... into religious law and polity...." *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151 (1976). Accordingly, this court has held that "personnel decisions are protected from civil court interference where review by the civil courts would require the courts to interpret and apply religious doctrine or ecclesiastical law." *McEnroy v. St. Meinrad School of Theology*, 713 N.E.2d 334, 337 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 529 U.S. 1068, 120 S.Ct. 1675, 146 L.Ed.2d 484 (2000).

[12] *Stewart v. Kingsley Terrace Church of Christ, Inc.*, 767 N.E.2d 542, 546 (Ind. Ct. App. 2002). Nevertheless, the First Amendment "does not entirely prohibit courts from opening their doors to religious organizations." *Konkle v. Henson*, 672 N.E.2d at 455. A court can apply neutral principles of law to churches without violating the First Amendment. *Id.* Application of neutral principles of law to a church defendant, however, has occurred only in cases involving church property or in cases where a church defendant's actions could not have

been religiously motivated. *See Brazauskas v. Fort Wayne-South Bend Diocesse, Inc.*, 714 N.E.2d 253 (Ind. Ct. App. 1999).

[13] The trial court's basis for granting summary judgment was that it was foreclosed by the First Amendment from considering the issues at hand because to address such issues would have required the trial court to interpret and apply religious doctrine or ecclesiastical law. Reverend Matthies contends that the trial court could avoid violating the First Amendment prohibition against excessive entanglement by applying neutral principles of contract law to his claims for breach of contract and failure to pay earned wages/benefits. Thus, Reverend Matthies maintains that his claim can be resolved without reference to either church law or doctrine.

[14] We are not convinced by Reverend Matthies's argument. There is no doubt that the Terms of Call set forth in the Contract provided that Reverend Matthies would receive five weeks of vacation. The question remains, however, as to whether upon the termination of his pastoral relationship by the Presbytery Reverend Matthies was still entitled to compensation for unused vacation time. This determination necessarily would have required inquiry into the reason for termination. *See Stewart v. Kingsley Terrace Church of Christ, Inc.*, 767 N.E.2d at 547 ("[a] determination of whether an employer had good cause to terminate an employee's employment contract necessarily involves a consideration of the reasons given for the termination") (citing *Rochester Capital Leasing v. McCracken*, 295 N.E.2d 375 (Ind. Ct. App. 1973)).

First Presbyterian cites abandonment of his pastoral duties as the impetus for termination of Reverend Matthies's pastoral relationship with First Presbyterian. The Presbytery, through the COM, determined that the discord between Reverend Matthies and First Presbyterian resulting from the belief that Reverend Matthies abandoned his duties had reached the point where Reverend Matthies's pastoral relationship needed to end "in order to prevent further deterioration of the spiritual health of the church." *Appellant's Appendix* at 86. First Presbyterian therefore asserts that Reverend Matthies, having abandoned his position, breached the Agreement, thereby relieving First Presbyterian of any further obligations under the Agreement. Reverend Matthies denies abandoning his pastoral duties and lists his pastoral activities in the weeks leading up to his termination.

To address these competing positions regarding the facts of this case would require a court to inquire into the religious doctrine of the Presbyterian Church and its polity. A court would have to determine what the duties of a pastor called to serve a local Session and congregation entail and then decide whether the pastor's conduct met such standards. Essentially, the court would have to second-guess, in this case, the Presbytery as to its determination that Reverend Matthies's pastoral relationship was detrimental to the spiritual health of the church. Indeed, the court's inquiry would necessarily require it to delve into church doctrine to pass judgment on whether Reverend Matthies was fit to serve as pastor of First Presbyterian and whether the pastoral services he claimed to have provided were sufficient to meet the standards set forth by the

Presbyterian Church. It is in this vein that this court has held that the First Amendment "proscribes intervention by secular courts into any employment decision made by religious organizations based on religious doctrines or beliefs." *McEnroy v. St. Meinrad School of Theology*, 713 N.E.2d at 337.

[17] We conclude that the trial court properly determined that review of the issues presented would have necessitated the court to interpret and apply religious doctrine or ecclesiastical law. The First Amendment requires civil courts to refrain from interfering in such matters. *See McEnroy v. St. Meinrad Sch. of Theology*, 713 N.E.2d 334. We therefore conclude that the trial court properly entered summary judgment in favor of First Presbyterian.

[18] Judgment affirmed.

Kirsch, J., concurs.

Crone, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Steven Matthies,

*Appellant-Plaintiff/Counterdefendant,*

v.

The First Presbyterian Church of Greensburg Indiana, Inc.,

*Appellee-Defendant/Counterclaimant*

Case No. 16A01-1409-PL-380

**Crone, Judge, concurring in part and dissenting in part**

[19] I agree with the majority that reviewing the issues presented by Matthies's breach of contract claim would require us to interpret and apply religious doctrine or ecclesiastical law, which is prohibited under the First Amendment. Therefore, I concur in the affirmance of summary judgment in favor of First Presbyterian on that claim.

[20] Respectfully, however, I do not believe that the First Amendment would preclude us (or the trial court or a jury) from considering Matthies's claim for unpaid vacation wages under the Wage Claim Statute. That claim, in my opinion, simply requires a determination of whether or not there was any vacation time accrued as of the date of Matthies's termination. If there was, I believe that claim could be viable regardless of the basis for his termination. Addressing that claim might involve resolving disputed facts, interpreting the

Contract, and applying the Wage Claim Statute, but it would not involve interpreting or applying religious doctrine or ecclesiastical law. Consequently, I would reverse the grant of summary judgment in favor of First Presbyterian on that claim.[5]

---

[5] I am unpersuaded by First Presbyterian's argument that the ministerial exception of the Indiana Minimum Wage Law should be read into the Wage Claims Statute. And as for First Presbyterian's argument that the Wage Claims Statute is inapplicable because it is not his "employer" for purposes of the Statute, I believe that there is, at minimum, a genuine issue of material fact that would preclude summary judgment on that issue.