Clayton K. STEWART, Appellant–
Defendant,

v.

KINGSLEY TERRACE CHURCH
OF CHRIST, INC., Appellee–
Plaintiff.

No. 49A05–0111–CV–505.

Court of Appeals of Indiana.

May 10, 2002.

Mark R. Waterfill, David E. Kress Indianapolis, Indiana, Attorneys for Appellant.

William N. Riley, Indianapolis, Indiana, Attorney for Appellee.

**OPINION**

RATLIFF, Senior Judge.

*STATEMENT OF THE CASE*

Plaintiff–Appellant Clayton K. Stewart ("Stewart") appeals the dismissal of his claim against the Kingsley Terrace Church of Christ, Inc. ("Kingsley Terrace").

We affirm.

*ISSUES*

Stewart raises three issues for our review, which we restate as:

I.  Whether the trial court's dismissal of Stewart's claim was proper where the dismissal followed Kingsley Terrace's motion for summary judgment.

II.  Whether the trial court's dismissal of Stewart's claim was precluded under the law of the case doctrine.

III.  Whether the trial court's dismissal of Stewart's claim was proper under the facts of the case.

*FACTS AND PROCEDURAL HISTORY*

Kingsley Terrace is a local body of believers that has its membership in the Church of Christ denomination. Each Church of Christ is self-governing and autonomous. The governance of the church is vested in its elders, who fulfill the dual role of being the board of directors for the not-for-profit corporation and the ecclesi-

astical governance of the Church. In these dual roles the elders have "decision making authority both in regard to the operation of the Church and in maintaining the purity of Christian Doctrine." Appellee's App. at 13.

Stewart entered into an employment contract with Kingsley Terrace that stated the contract term was to begin on November 15, 1998, and extend for a three-year period. Under the contract, Stewart was to serve as Kingsley Terrace's minister. The contract provided that the contract term was subject to a subsequent termination provision, which provided that "[Kingsley Terrace] shall pay [Stewart] his compensation up to the date of termination." Appellant's Appendix at 23–24.[1] The contract referred to an attached document, entitled "Position Description," that outlined Stewart's duties and specified that he was required to work "under the oversight of the Eldership and with the Leadership of the Church." Appellant's Appendix at 26–27. The document also stated that, as the minister, Stewart would perform duties as assigned by the Eldership.

On August 26, 1999, Kingsley Terrace's elders terminated the contract on the basis that Stewart had attempted to usurp the elders' spiritual authority "by accusing them of allowing the spread of false doctrine and then calling on them to be removed." Appellee's Appendix at 108. The elders determined that Stewart would receive ninety days severance pay.

On February 2, 2000, Stewart filed a complaint for breach of contract against Kingsley Terrace. In the complaint, Stewart alleged that the contract "contains no termination provision, and therefore, [Kingsley Terrace] is obligated to pay

[Stewart] to and until November 15, 2001." Appellant's Appendix at 18. In response to a summary judgment motion filed by Kingsley Terrace, the trial court issued an order in which it determined that the case should be dismissed for lack of subject matter jurisdiction. The trial court's order also denied Kingsley Terrace's motion for summary judgment on the issue of accord and satisfaction.[2] Stewart now appeals the trial court's order as it applies to subject matter jurisdiction.

## DISCUSSION AND DECISION

### I. PROPRIETY OF DISMISSAL AFTER SUMMARY JUDGMENT

■ Stewart contends that the trial court erred in dismissing his claim by entry of an order of summary judgment. An attack on the trial court's subject matter jurisdiction cannot form the basis of a motion for summary judgment. *Albright v. Pyle*, 637 N.E.2d 1360, 1362 (Ind.Ct. App.1994) (citing *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994)). Instead, a claim of lack of subject matter jurisdiction should be advanced through a motion to dismiss under Indiana Trial Rule 12(B)(1). *Id.* at 1363.

■ The lack of subject matter jurisdiction, however, can be raised at any time, and either the trial court or this Court is required to consider the issue *sua sponte* if it is not properly raised by the party challenging jurisdiction. *Id.* A reading of the trial court's order discloses that the trial court understood the import of *Albright*, and the court was very careful to characterize its adjudication as a dismissal rather than a grant of summary judgment. Fur-

---

1. Inexplicably, Stewart argued below, and continues to argue on appeal, that there is no termination provision in the contract.

2. Kingsley Terrace's claim of accord and satisfaction was based upon Stewart's negotiation of the severance check.

thermore, even if the trial court had erred in treating this issue as a matter of summary judgment, this court would treat Kingsley Terrace's motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction under T.R. 12(B)(1).[3] *See Brazauskas v. Fort Wayne–South Bend Diocese, Inc.,* 714 N.E.2d 253, 259 (Ind.Ct.App.1999), *trans. denied.* The trial court did not err in converting Kingsley Terrace's summary judgment motion into a motion to dismiss.

## II. PROPRIETY OF DISMISSAL UNDER THE LAW OF THE CASE DOCTRINE

After the complaint was filed in this case, but before the motion for summary judgment was filed, Kingsley Terrace filed a motion to dismiss for lack of subject matter jurisdiction. The original trial judge in this case denied the motion. Subsequently, a change of judge occurred, and the subsequent judge revisited the issue of subject matter jurisdiction upon Kingsley Terrace's submission of its motion for summary judgment.

Stewart claims that the subsequent judge was bound by the original judge's denial under the law of the case doctrine. Stewart argues that once the trial court entered its original ruling, Stewart "had the right to believe the issue was resolved." Appellant's Brief at 4.

■ Generally, until a judgment is entered, a trial court can amend, modify, or change an earlier decision. *Merrillville Conservancy District v. Atlas Excavating, Inc.,* 764 N.E.2d 718, 725 (Ind.Ct.App. 2002). Under the law of the case doctrine, a trial court is not bound by its own earlier ruling unless that ruling has been adopted by an appellate court. *Id.*

Here, the original judge issued an order that denied Kingsley Terrace's motion to dismiss. However, this ruling was not a final appealable order. As such, the subsequent judge was not bound by the order and was free to decide the issue of subject matter jurisdiction as if it were before the trial court for the first time. Therefore, the subsequent judge did not err in ruling on the issue of subject matter jurisdiction, and we address the propriety of her ruling in Issue III below.

Stewart further argues that a trial court should not reverse its prior decision absent extraordinary circumstances and that such circumstances are not present. He expresses his concern that this court should not "endors[e] the practice of parties filing repeated motions to dismiss" because to do so "would result in parties constantly rearguing issues that were previously decided." Appellant's Brief at 7. In support of his argument, Stewart cites *Certain Northeast Annexation Area Landowners v. City of Fort Wayne,* 622 N.E.2d 548, 550 (Ind.Ct. App.1993), *trans. denied.*

■ The law of the case doctrine is a discretionary rule of practice. *Landowners,* 622 N.E.2d at 549. A court has the power to revisit prior decisions of its own or a coordinate court in any circumstance, "although as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Id.* Here, we cannot say that the subsequent judge abused her discretion in reconsidering a prior non-final order when she questioned whether the trial court had jurisdiction to decide this matter. The issue of subject matter jurisdiction, which goes to the very heart of a

---

**3.** As noted above, the trial court also denied summary judgment on the issue of accord and satisfaction. Apparently realizing that its denial was void for lack of subject matter jurisdiction, the trial court noted that its reason for denying summary judgment on this issue was "judicial economy." The trial court's denial is not an issue in this appeal.

trial court's authority, is certainly extraordinary enough to warrant a trial court's exercise of its discretion to insure that the issue was decided correctly. The upshot is that we leave it to the trial court's discretion to determine whether it should consider renewed motions, apply the strictures of Indiana Trial Rule 53.4, order a party to refrain from filing such motions, or take some other action.

### III.  PROPRIETY OF DISMISSAL UNDER THE FACTS

In determining whether to dismiss an action for lack of subject matter jurisdiction, a trial court may resolve factual disputes. *Perry,* 637 N.E.2d at 1286. The trial court has "considerable latitude in devising procedures to ferret out the facts pertinent to jurisdiction," and in doing so the court may consider the complaint, any motions, affidavits, and "other evidence submitted." *Id.* at 1287. Moreover, the court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.* When, as here, the trial court's determination is made on a paper record, rather than after an evidentiary hearing, we conduct a *de novo* review. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001). This court will affirm the trial court's judgment "on any theory supported by the evidence of record." *Id.*

The United States Supreme Court has long held that the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, requires civil courts to refrain from interfering in matters of church discipline, faith, practice, and religious law. *Watson v. Jones,* 80 U.S. 679, 727 (13 Wall.), 20 L.Ed. 666 (1871). Thus, civil courts are precluded from resolving disputes involving churches if "resolution of the disputes cannot be made without extensive inquiry ... into religious law and

polity...." *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151 (1976). Accordingly, this court has held that "personnel decisions are protected from civil court interference where review by the civil courts would require the courts to interpret and apply religious doctrine or ecclesiastical law." *McEnroy v. St. Meinrad School of Theology,* 713 N.E.2d 334, 337 (Ind.Ct.App.1999), *trans. denied, cert. denied,* 529 U.S. 1068, 120 S.Ct. 1675, 146 L.Ed.2d 484 (2000).

The First Amendment "does not entirely prohibit courts from opening their doors to religious organizations." *Konkle v. Henson,* 672 N.E.2d 450, 455 (Ind.Ct.App. 1996). Instead, a court can apply neutral principles of law to churches without violating the First Amendment. *Id.* However, the application of neutral principles of law to a church defendant has occurred only in cases involving church property or in cases where a church defendant's actions could not have been religiously motivated. *See Brazauskas,* 714 N.E.2d at 262.

Here, Stewart argues that the trial court had "the power to resolve this contract dispute because it does not involve the interpretation of any religious or ecclesiastical principles." Appellant's Brief at 8. Kingsley Terrace, on the other hand, argues that resolution of this issue entails a constitutionally prohibited examination of the doctrinal issues that surrounded the decision to terminate Stewart's employment. The parties and the trial court treated the contract between Kingsley Terrace and Stewart as an employment contract for a definite term that may be terminated only for cause or by mutual agreement. *See Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 717 (Ind.1997). It is only upon a showing that termination occurred on the basis of

good cause or mutual agreement that an employer avoids liability for termination of employment under this type of contract. *Ohio Table Pad Co. of Indiana v. Hogan,* 424 N.E.2d 144, 146 (Ind.Ct.App.1981). A determination of whether an employer had good cause to terminate an employee's employment contract necessarily involves a consideration of the reasons given for the termination. *Rochester Capital Leasing v. McCracken,* 156 Ind.App. 128, 295 N.E.2d 375, 378 (1973).

In applying the above analysis to the instant case, we observe that the contract did not provide specific grounds for termination. Under *Orr* and *Ohio Table,* however, the contract could be terminated for good cause shown. In order to make a determination of good cause, the trial court would have had to engage in the impermissible scrutiny of the doctrinal and/or church polity issues that formed the basis for the elders' decision to terminate Stewart's contract. As we held in *Brazauskas,* "when the officials of a religious organization state their reasons for terminating a pastoral employee in ostensibly ecclesiastical terms, the First Amendment effectively prohibits civil tribunals from reviewing these reasons. . . ." 714 N.E.2d at 262. Accordingly, we cannot say that the trial court erred in concluding that it lacked subject matter jurisdiction over this matter.

In his brief, Stewart concedes that the elders had the authority to terminate his contract.[4] He then states that the church remained obligated under his employment contract to pay his salary for the remaining portion of the three-year term. Thus, he reasons that his claim can be decided on purely contractual grounds. However, under *Ohio Table,* as a general rule good cause for termination of an employment contract and the employer's liability for payment of wages for the remaining portion of the contract are inextricably linked. Absent a buy-out or similar provision, a finding of good cause is a finding of no liability on the part of the employer. Stewart claims no pertinent contract provision that severs this link, and thus he fails to show that consideration of his claim can be accomplished absent resolution of the factual issue of good cause.

Stewart contends that Don Price, a member of Kingsley Terrace's governing body, admitted that Stewart's claim did not involve the interpretation of religious principles. He points to Price's response to the last two questions in the following exchange between Price and Stewart's attorney during Price's deposition:

Q. Do you know why Minister Stewart is suing the church?

A. I have my own personal opinion.

Q. What is that opinion?

A. That he's trying to get back at the elders.

Q. Do you understand that Minister Stewart is not suing over any doctrinal disputes or interpretations of the church?

A. Yes.

Q. You understand that he is just seeking money under the employment agreement?

A. Yes.

Appellant's App. at 149.

As we explained above, under the facts of this case there is an inextricable link between the factual issue of cause with its doctrinal and/or church polity entanglements and the legal issue of payment. Price's agreement with the characteriza-

---

4. We note that Stewart's concession that the elders had authority to terminate him for good cause is not the same as a concession that he was terminated for good cause.

tion of Stewart's claim by Stewart's attorney's does not break that link.

## CONCLUSION

Although the issue of subject matter jurisdiction arose from Kingsley Terrace's summary judgment motion, the trial court did not err in considering the issue. The trial court was not prevented from dismissing Stewart's claim by the law of the case doctrine. Furthermore, the trial court did not err in dismissing Stewart's claim for lack of subject matter jurisdiction.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.