**EMMANUEL HOUSE OF PRAYER CHURCH OF GOD IN CHRIST, INC., n/k/a New Emmanuel House of Prayer Church of Deliverance, Inc., Gregory Williams, et al., Appellants–Defendants,**

v.

**The Rt. Reverend Milton L. HALL, Jurisdictional Bishop of Indiana First Jurisdiction of the Church of God in Christ, Inc., Appellee–Plaintiff.**

No. 45A03–0207–CV–251.

Court of Appeals of Indiana.

May 13, 2003.

As Corrected June 17, 2003.

ever, such considerations are appropriate in all sentence review cases.

@=84.5(10)

Dock McDowell, Jr., McDowell Law Firm, Merrillville, IN, Attorney for Appellant.

Calvin D. Hawkins, Gary, IN, Attorney for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE* [1]

Emmanuel House of Prayer Church of God in Christ, Inc. n/k/a New Emmanuel House of Prayer Church of Deliverance, Inc., David Goshay, Robert Milsap, Rodnie Norman, Mildred Porter, Joyce A. Richardson, Johnny Sparks, Debra Thomas, Herman Washington, Gregory Williams, Lenar Fields, Valerie Smith, and Dorothy Thomas (collectively "the Church") appeal the trial court's order enforcing their settlement agreement with the Rt. Reverend Milton L. Hall ("Bishop Hall"), the Jurisdictional Bishop of Indiana, First Jurisdiction of the Church of God in Christ, Inc.

We reverse.

*ISSUE*

We consolidate and restate the issue as whether the trial court had subject matter jurisdiction.

1. On April 10, 2003, this court heard oral arguments in this case. We would like to

*FACTS*

In August 1998, the House of Prayer Church of God in Christ and Emmanuel Church of God in Christ merged their memberships and opened a new church named the Emmanuel House of Prayer Church of God in Christ, Inc. in Gary. Reverend Askew Haynes ("Rev. Haynes") was the lead pastor of this Church until his death on November 15, 2000. On March 13, 2001, Bishop Hall appointed Ervin King to be lead pastor of the Church. On March 17, 2001, the Church issued a resolution indicating that a majority of the Church's membership had selected Gregory Williams to be lead pastor.

On March 22, 2001, Bishop Hall filed a Complaint For Injunctive Relief. In his complaint, Bishop Hall alleged that he had appointed Ervin King as lead pastor "pursuant to section D paragraph 17 of Article III Part II of the Official Manual with the Doctrines and Discipline of the Church of God in Christ." (App. 131). In addition, Bishop Hall alleged that Gregory Williams had been improperly selected as lead pastor, that Ervin King had been locked out of the church, and that the Church's actions were in violation of Church of God in Christ doctrine and were adversely affecting the Church's finances and property. Bishop Hall asked the trial court to temporarily, preliminarily, and permanently enjoin the Church "from preventing the orderly and proper transition of pastoral leadership," and "from interfering with the orderly and proper process of the Church of God in Christ, Inc. ...." (App. 132).

On March 27, 2001, the trial court held a hearing on Bishop Hall's complaint. At the hearing, the Church filed various counter claims and a motion to dismiss, challenging whether the court had subject matter jurisdiction. Bishop Hall's counsel,

thank counsel for their well prepared presentations.

Calvin Hawkins, then moved for additional time to continue settlement negotiations with the Church, which included the national church's general counsel. Over the Church's objection, the trial court granted the motion. After meeting for a short time, the parties came before the trial court and read the following agreement into the record:

Bishop Milton will continue to preside over Emmanuel Church of God in Christ for the next 60 days. Then, this 60 day period, this matter will be returned to the hierarchy of the Church of God in Christ where it will submit the dispute to the various boards and bodies within our organization. We will ask that the order be dismissed. We will ask that the counter motions that we filed today also be dismissed. [Gregory Williams] will act as Bishop Hall's assistant pastor. Bishop Hall will be afforded the right to choose the preachers that would come before the congregation each Sunday. Additionally, we would ask or they have agreed that there would be no further disruptions to the services that are going to be held at Emmanuel Church of God in Christ.

(App. 16–17). Bishop Hall subsequently agreed to dismiss his complaint and drafted a proposed order, subject to review by the Church's counsel, Dock McDowell, Jr.

During the first week of April 2001, the national church held its semiannual meeting at its headquarters in Memphis, Tennessee and discussed the dispute between Bishop Hall and the Church. Church member David Goshay attended the meeting and reported that no progress was made in resolving the dispute.

On April 10, 2001, Calvin Hawkins, Bishop Hall's counsel, faxed McDowell, the Church's counsel, a copy of the proposed order for dismissal. The proposed order stated that (1) the parties would agree to dismiss their respective claims; (2) Bishop Hall would serve as lead pastor for 30 days while Gregory Williams would serve as assistant pastor; (3) the locks and chains would be removed from the doors; (4) Bishop Hall would have the right to select preachers to perform the weekly services; and (5) any further disputes would be resolved "within the guidelines of the polity and procedure of the Church of God in Christ, Inc." (App. 176).

On that same day, McDowell mailed a response to Hawkins indicating that the Church would not consent to the proposed order. He continued to assert that the trial court did not have subject-matter jurisdiction, and that the settlement agreement was between the Church and the national church, but not with Bishop Hall. McDowell explained that the Church believed that the claims were to be dismissed to "allow the parties to mediate and conciliate." (App. 177).

On April 13, 2001, McDowell sent a letter to Hawkins indicating his willingness to meet "at the courthouse on Monday" to file their respective motions to dismiss. (App. 179). However, on April 16, 2001, McDowell sent another letter objecting to Hawkins' desire to insert the words, "pursuant to the agreement of the parties," in his proposed order. (App. 180). McDowell explained that inclusion of that phrase would indicate that the Church had changed or waived its position concerning whether the trial court lacked subject-matter jurisdiction.

On April 18, 2001, the Church sent notice to Church of God in Christ headquarters that it was terminating its relationship with the national church. Subsequently, the Church dissolved its existing corporate form and reincorporated as the New Emmanuel House of Prayer Church of Deliverance. Then, on May 8, 2001, the trial court issued an order dismissing with prejudice the parties' causes of action "pursu-

ant to the parties' agreement in open [c]ourt on March 27, 2001, ..." (App. 181).[2]

On March 11, 2002, Bishop Hall filed a Motion To Enforce Settlement Agreement And To Order Defendants To Provide A Financial Accounting Of Local Church Assets. Bishop Hall alleged that the settlement agreement had resolved all issues between the parties and that the Church has been attempting to "thwart judicial action...." (App. 137). In addition, Bishop Hall alleged that the Church's assets may have been dissipated and that a financial accounting was necessary.

On June 27, 2002, the trial court heard evidence concerning Bishop Hall's motion to enforce the settlement agreement and took the matter under advisement. On July 3, 2002, the trial court entered judgment granting Bishop Hall's motion. The trial court found that the settlement agreement "dealt with the issue of the pastor on a temporary basis" and is now moot. (App. 5). In addition, the trial court found that those terms of the settlement agreement that were of a permanent nature involved in the parties' causes of action were resolved by the settlement agreement, "and [that] the parties will resolve their remaining issues within the church itself. These terms of the settlement agreement remain valid and binding, and the [c]ourt now enforces the same." (App. 6).

On July 26, 2002, the Church filed its Notice of Appeal and Motion For Immediate Temporary Stay. On August 16, 2002, Bishop Hall filed an Application For Citation For Contempt of Court, alleging that since the trial court entered judgment to enforce the settlement agreement, the Church had thwarted attempts "to resolve property issues related to the local church...." (App. 192). On the same date, the trial court issued a contempt citation to the Church and scheduled a hearing for September 16, 2002.

On September 3, 2002, the Indiana Court of Appeals heard arguments on the Church's motion for an immediate stay of the trial court's judgment and citation for contempt. On September 4, 2002, the Court of Appeals granted the Church's motion and ordered a stay of the trial court's judgment and citation for contempt pending resolution of the appeal. In addition, the Court of Appeals ordered that the Church remain in possession of all real estate and other property provided that it post a $50,000 appeal bond. The Church was also directed to refrain from encumbering, conveying, concealing, or destroying any church property and to maintain insurance coverage on its real property.

On October 10, 2002, Bishop Hall filed a complaint to quiet title to the Church's real estate. In the new complaint, Bishop Hall alleged that in the mid–1950's the Church of God in Christ issued a certificate of membership to the church then known as the House of Prayer Church of God in Christ. He also alleged that the certificate of membership requires local churches to abide by the constitution of the Church of God in Christ, and that withdrawal from membership can only be authorized by the national church's general assembly. He further alleged that one of the constitutional provisions requires that the national church headquarters hold in trust any real or personal property acquired by deed by local churches. As such, Bishop Hall asserted that on April 12, 2001, the Church fraudulently conveyed 12 parcels of property from its old corporate form to its new corporate form be-

---

**2.** The Church sought removal of the case to the U.S. Federal Court for the Northern District of Indiana in April 2001. The trial court granted the Church's request for removal and the case was transferred to the federal district court. Subsequently, in November 2001, the federal district court remanded the case back to the Superior Court of Lake County, whereby the Honorable Robert A. Pete became the presiding judge in this case.

cause it had not received permission to withdraw from the national church. As relief, Bishop Hall requested that if the Church is found to have withdrawn from the national membership, then the trial court quiet title in favor of the national body of the Church of God in Christ. Alternatively, Bishop Hall requested that if the Church had improperly withdrawn from the membership, then the trial court reform the titles to show each parcel held in trust by the Church of God in Christ.

On December 13, 2002, the Church filed its reply brief and a motion to raise a new issue in this case. Specifically, the Church argues that in his appellee brief, Bishop Hall improperly attempted to raise a new issue on appeal and to confer subject-matter jurisdiction on the trial court by arguing that his original complaint for injunctive relief involved property rights. Because Indiana Appellate Rule 46(C) prohibits appellants from raising new issues in their reply brief, the Church requested the Court of Appeals to grant leave for it to raise the doctrine of judicial estoppel.

## DECISION

The Church argues that the trial court could not enforce the settlement agreement because it did not have subject-matter jurisdiction. Specifically, the Church argues that since the dispute involves ecclesiastical doctrine and church polity concerning employment, the court could not acquire subject-matter jurisdiction. Bishop Hall counters that the trial court did have subject-matter jurisdiction because the dispute involves property rights. In response, the Church contends that property rights, if any, are only at issue in Bishop Hall's new pending complaint to quiet title to real estate, which was filed on October 10, 2002. We agree.

The United States Supreme Court's decision in *Presbyterian Church v. Hull Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969) is instructive. In that case, two local churches came to view certain actions and pronouncements of the general church as violative of the church's constitution and doctrines. As a result, the local churches voted to sever their ties with the general church. To no avail, the general church sought to reconcile with the local churches. Subsequently, the general church sought to take over the property of the local churches until new local leadership could be appointed. The local churches did not appeal the general church's decision pursuant to internal procedures, but filed suit in Georgia state court. The general church moved to dismiss for lack of subject-matter jurisdiction. The motion was denied and the matter "was submitted to the jury on the theory that Georgia law implies a trust of local church property for the benefit of the general church on the sole condition that the general church adhere to its tenets of faith and practice existing at the time of affiliation by the local churches." 393 U.S. at 443, 89 S.Ct. at 603 (This was known in Georgia as the departure-from-doctrine element of the implied trust theory.). As a result, the jury found for the local churches and the general church appealed.

After granting certiorari, the Supreme Court reversed and remanded, holding that the First Amendment was violated because the state court had to "make its own interpretation of the meaning" of religious doctrine in order to conclude that the general church had departed from its doctrines. *Id.* at 449, 89 S.Ct. at 606. Although the Court noted that decisions of a church hierarchy can be "accepted in litigation before the secular courts as conclusive," the departure-from-doctrine standard was unconstitutional because it was a creation of state law. *Id.* at 447, 89 S.Ct. at 605.

More recently, in *Stewart v. Kingsley Terrace Church of Christ, Inc.*, 767 N.E.2d 542 (Ind.Ct.App.2002), this court held that the trial court properly dismissed the minister's wrongful termination claim for lack of subject-matter jurisdiction because the trial court would have had to "engage in the impermissible scrutiny of ... doctrinal and/or church polity issues...." *Id.* at 547. We noted,

> The United States Supreme Court has long held that the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, requires civil courts to refrain from interfering in matters of church discipline, faith, practice, and religious law. Thus, civil courts are precluded from resolving disputes involving churches if "resolution of the disputes cannot be made without extensive inquiry ... into religious law and polity...." Accordingly, this court has held that "personnel decisions are protected from civil court interference where review by the civil courts would require the courts to interpret and apply religious doctrine or ecclesiastical law."

*Id.* at 546 (citations omitted).

In this case, Bishop Hall's complaint for injunctive relief requires the trial court to interpret ecclesiastical doctrine. Specifically, Bishop Hall alleges that, as Jurisdictional Bishop of Indiana, only he can appoint the lead pastor of the Church. As a result, Bishop Hall's complaint alleges that the church violated various provisions within the Official Manual with the Doctrines and Discipline of the Church of God in Christ ("the Official Manual") when it appointed Gregory Williams as lead pastor. In addition, Bishop Hall has alleged that the Church's actions have had an adverse effect on the Church's finances and property. As a result, Bishop Hall requested that the trial court temporarily, preliminarily, and permanently enjoin the Church "from preventing the orderly and proper transition of pastoral leadership," and "from interfering with the orderly and proper process of the Church of God in Christ, Inc. ...." (App. 132).

Because there are few matters more ecclesiastical in nature than selecting the lead pastor of a church, the trial court erred when it accepted jurisdiction over the complaint. *Stewart*, 767 N.E.2d 542 (no subject matter jurisdiction where civil courts must interpret religious doctrine or ecclesiastical law). In addition, on September 4, 2002, we issued an order staying the trial court's order to preserve the status quo pending the outcome of this appeal. Ind. Trial Rule 62(D)(3). We hereby hold that said stay shall remain in force and effect pending certification of this appeal.

Reversed.

NAJAM, J., concurs.

GARRARD, Sr. J., concurs with separate opinion.

GARRARD, Senior Judge, concurs with opinion.

I concur with the majority. I write separately, however, because it seems to me that there is an underlying question which will ultimately need to be answered in order to resolve the dispute between the parties.

Churches are generally said to fall into one of two categories. Congregational churches owe no submission to any organization outside the congregation, and, accordingly, a majority of the members are entitled to determine whatever issues may arise in the church. A hierarchical church, on the other hand, is one of a number of groups, united to form a more general body of churches with ecclesiastical control placed in the general association over the individual churches and members. *See, Watson v. Jones,* 80 U.S. (13 Wall.) 679, 724–727, 20 L.Ed. 666 (1871).

In this case the parties acknowledge that the Church Of God In Christ, Inc. is a hierarchical church and its Manual clearly so provides.

The history of the local church, Emmanuel House of Prayer Church of God in Christ, Inc., n/k/a New Emmanuel House of Prayer Church of Deliverance, Inc. discloses that it was created in 1998 through the merger of two existing churches.

It is acknowledged that at least one of the pre-merger churches held a Certificate of Membership from the national church.[3] Moreover, it appears undisputed that no new Certificate of Membership was issued to the church which resulted from the merger.

The Official Manual with the Doctrines and Discipline of the Church Of God In Christ sets forth the following in both § D of the constitution of the church and in Part III the statement of doctrine and discipline: (1) No local church shall have full status in the national church until it has been registered by its Jurisdictional Bishop in the office of the General Secretary, who shall then issue a Certificate of Membership for the local church; (2) Neither a local church, whose Jurisdictional Bishop has not received a Certificate of Membership from the National Office, nor any member thereof shall be entitled to enjoy the rights and privileges of membership in the national church; and (3) A local church which has been accepted by the national church and issued a Certificate of Membership shall not withdraw or sever its relations with the General Church, except by and with the permission of the General Assembly.

It appears to me that determining the effect that the merger had upon the status of the local church as a member of the national church is a critical question. It is, also, necessarily a question of ecclesiastical law that our civil courts are forbidden to entertain.[4]

I agree that the trial court was without jurisdiction and the action should be dismissed for that reason.

---

**3.** At oral argument it was suggested that both pre-merger churches held such certificates, but that fact does not appear in the record before us.

**4.** That is true of the relevance and weight to be given to evidence of how the parties treated each other after the merger occurred.