ATTORNEY FOR PETITIONERS:
**JAMES K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEY FOR RESPONDENT:
**JESSICA R. GASTINEAU**
OFFICE OF CORPORATION COUNSEL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Feb 18 2025, 2:03 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

MUIR WOODS SECTION ONE ASSN., )
INC.; MUIR WOODS, INC.; SPRUCE )
KNOLL HOMEOWNERS ASSOC., INC.; )
and OAKMONT HOMEOWNERS ASSOC., )
INC., )
                                 )
       Petitioners, )
                                  )
       v. )  Cause No. 24T-TA-00008
                                  )
MARION COUNTY ASSESSOR, )
                                  )
       Respondent. )

## ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

**FOR PUBLICATION**
**February 18, 2025**

MCADAM, J.

This appeal presents a significant question about the Tax Court's subject matter jurisdiction under Indiana's direct appeal statute, Indiana Code § 6-1.1-15-5(g). The Indiana Board of Tax Review (the "Indiana Board" or "Board") summarily dismissed the taxpayers' appeal under its failure to appear rule, 52 Indiana Administrative Code 4-9-4, after the taxpayers failed to appear at a scheduled hearing. The taxpayers now argue that their motion objecting to the dismissal constituted a petition for rehearing under Indiana Code § 6-1.1-15-5(a). In their view, this allows them to bypass the

administrative process and triggers this Court's direct appeal jurisdiction as the Board did not decide the motion by the statutory deadline for deciding petitions for rehearing. The Court disagrees and concludes that it lacks subject matter jurisdiction because the taxpayers' motion invoked the Board's distinct failure to appear process rather than its rehearing process, which is not a ground for direct appeal under Indiana Code § 6-1.1-15-5(g).

## BACKGROUND

Taxpayers Muir Woods Section One Association Inc., Muir Woods, Inc., Spruce Knoll Homeowners Association, Inc., and Oakmont Homeowners Association, Inc. (collectively, the "Homeowners Associations") are homeowners associations that owned forty-seven parcels of common area land in several Indianapolis subdivisions during the 2001-2003 tax years. (Pet. Jud. Rev. ("Pet'rs' Pet.") ¶¶ 46-47, Ex. D.) In August 2015, more than nine years ago, the Homeowners Associations asked the Indiana Board to decide whether their land qualified for the common area property tax exemption, whether the Marion County Assessor improperly failed to apply a base rate discount, and whether their land had been subjected to double taxation. *See Muir Woods Section One Ass'n v. Marion Cnty. Assessor* (*Muir Woods I*), 154 N.E.3d 877, 879 (Ind. Tax Ct. 2020)*, aff'd in part, rev'd in part and remanded sub nom. Muir Woods Section One Ass'n v. O'Connor* (*Muir Woods II*), 172 N.E.3d 1205 (Ind. 2021). Three years later, the Assessor moved to dismiss for failure to state a claim. *Id.* The Board granted the motion, finding that the Homeowners Associations had pursued their claims using an improper procedural mechanism. *See id*. at 879-80.

On appeal, this Court affirmed the Board's dismissal of the exemption and

2

discount factor claims but reversed its dismissal of the double taxation claim. *See id.* at 883. The Court explained that the Homeowners Associations were entitled to present evidence on the double taxation claim because no administrative hearing had been held. *Id.* The Homeowners Associations then appealed to the Indiana Supreme Court. *See Muir Woods II*, 172 N.E.3d at 1205-08. The Supreme Court determined that the discount factor claim should not have been dismissed and remanded both the discount factor and double taxation claims to the Indiana Board for further proceedings. *Id.* at 1207-08.

This appeal stems from the events following the Supreme Court's remand, after which the Indiana Board scheduled a hearing for December 15, 2021, to address the Homeowners Associations' remaining claims.[1] (*See* Cert. Admin. R. at 558-66.) The Board's scheduling order warned that "[i]f the person filing this petition, or their authorized representative, does not attend the hearing, this petition may be denied." (Cert. Admin. R. at 566.) After the Homeowners Associations failed to appear, the Board dismissed the appeal under its administrative rule allowing dismissal for failure to appear on December 22, 2021, through an order entitled "Notice of Dismissal - Failure to Appear" (the "Dismissal Order").[2] (Cert. Admin. R. at 2184.) The Board's Dismissal

---

[1] Indiana Evidence Rule 201 permits courts to take judicial notice of "records of a court of this state[.]" Ind. Evidence Rule 201(b)(5); *accord Horton v. State*, 51 N.E.3d 1154, 1160 (Ind. 2016). Accordingly, the Court takes judicial notice of its own records, specifically the certified administrative record, briefs, and oral argument transcript filed in *Muir Woods Section One Association Inc., et al. v. Monroe County Assessor*, Cause No. 22T-TA-00001. All citations to the certified administrative record in this opinion refer to that record.

[2] The Dismissal Order references the predecessor to the current administrative rule, 52 Indiana Administrative Code 2-10-1, which was repealed in 2020 and replaced in 2022 with the substantially similar 52 Indiana Administrative Code 4-9-4. *See Muir Woods Section One Ass'n v. Marion Cnty. Assessor* (*Muir Woods III*), 225 N.E.3d 236, 240 n.2 (Ind. Tax Ct. 2023).

Order stated that the Homeowners Associations could file an "objection" within ten days, explaining their failure to appear and demonstrating good cause, and that the Board could, at its discretion, schedule another remand hearing. (Cert. Admin. R. at 2184.) On January 3, 2022, the Homeowners Associations filed a motion seeking to reverse the Board's dismissal, entitled "Motion to Vacate and Set Aside Notice of Dismissal" (the "Motion to Vacate"). (Cert. Admin. R. at 2185-2225.) A week later, on January 10, 2022, the Board took the Motion to Vacate under advisement and scheduled a hearing for February 11, 2022, to address it along with several other pending matters. (*See* Cert. Admin. R. at 2242-44.)

Three days later, on January 13, 2022, while the Motion to Vacate was pending, the Board also denied the Homeowners Associations' motion for partial summary judgment, which had been filed just before the December 15 hearing. (Cert. Admin. R. at 2245-46.) The Homeowners Associations sought reconsideration of the ruling by filing a motion, titled "Petition for Rehearing of Order Denying Summary Judgment," on January 18, 2022. (Cert. Admin. R. at 2276-84.) Then, despite the ongoing administrative proceedings, the Homeowners Associations filed an appeal with this Court on February 7, 2022, leading to the decision in *Muir Woods Section One Association, Inc. v. Marion County Assessor* (*Muir Woods III*), 225 N.E.3d 236 (Ind. Tax Ct. 2023). (*See* Cert. Admin. R. at 2285-2314.)

In *Muir Woods III*, this Court determined that it lacked subject matter jurisdiction because the Homeowners Associations' appeal was premature as the Board had not yet issued an appealable final determination. *See id.*, 225 N.E.3d at 244. The Court found that the Board's Dismissal Order ceased to qualify as an appealable final

4

determination once the Board took the Homeowners Associations' Motion to Vacate under advisement and scheduled it for hearing. *See id.* at 243. In its decision, this Court treated the Motion to Vacate as a petition for rehearing under Subsection 5(a) of Indiana Code § 6-1.1-15-5. *See id.* at 242-44. As a result, the Court dismissed the appeal and remanded the case to the Board for further proceedings. *Id.* at 244.

This appeal arises from the Board's response to the Court's remand order. On February 20, 2024, after the decision in *Muir Woods III*, the Board issued an order setting another remand hearing in the appeal. (*See* Pet'rs' Pet. ¶¶ 34-35, Ex. B.) The order stated that the April 1, 2024, hearing would address "all pending matters, including" the Motion to Vacate, the applicability of deadlines under the petition for rehearing framework, any outstanding case management issues, and the discount factor and double taxation claims. (*See* Pet'rs' Pet., Ex. B.) On March 1, 2024, the Homeowners Associations moved to continue the portion of the hearing related to their primary claims and requested the establishment of a case management plan for resolving them. (*See* Pet'rs' Pet. ¶ 38, Ex. C.) They also asked the Board to vacate its dismissal before the April 1 hearing. (*See* Pet'rs' Pet., Ex. C ¶¶ 16-18.) On March 29, 2024, before the Board ruled on the motion for partial continuance and before the hearing was held, the Homeowners Associations initiated this appeal. (*See* Pet'rs' Pet. ¶ 40.)

In this appeal, the Homeowners Associations seek to have the Court review their assessment and taxation claims *de novo* under Subsection 5(g) of Indiana Code § 6-1.1-15-5. They cite the Board's failure to issue a final determination within the statutory timeframe for rehearing under Subsection 5(a) of the same statute. (*See* Pet'rs' Pet. ¶¶

5

4-13; Hr'g Tr. at 26-30.) The Assessor has countered with a motion to dismiss, arguing that the Homeowners Associations have not satisfied the statutory requirements for a petition for rehearing under Subsection 5(a) and must therefore exhaust all administrative remedies before seeking judicial review. (*See* Resp't Br. Supp. Mot. Dismiss at 1-10.)

## STANDARD OF REVIEW

When a party opposes a request for *de novo* review under Subsection 5(g) of Indiana Code § 6-1.1-15-5, arguing that the opposing party has not met the statutory requirements and must exhaust all available administrative remedies, the defense is properly raised through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). *See GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001) In deciding such a motion, the Court may consider the petition for judicial review, the motion, and any supporting evidence, including affidavits. *See id.*; *Joseph R. Guy, P.C. v. Indiana Dep't of State Revenue*, 188 N.E.3d 74, 77 (Ind. Tax Ct. 2022). In addition, the Court may establish procedures to uncover jurisdictional facts, weigh the evidence to determine those facts, and resolve any related factual disputes. *See GKN Co.*, 744 N.E.2d at 400; *Guy*, 188 N.E.3d at 77; *Borgman v. State Farm. Ins. Co.*, 713 N.E.2d 851, 854 (Ind. Ct. App. 1999), *trans. denied*.

## DISCUSSION

"Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006). "When a court lacks subject matter jurisdiction, any action it takes is void." *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994) (citation

6

omitted). The parties cannot, by consent or agreement, confer subject matter jurisdiction on a court. *Goldstein v. Indiana Dep't of Loc. Gov't Fin.*, 876 N.E.2d 391, 393 (Ind. Tax Ct. 2007). Indiana courts derive their jurisdiction solely from the Indiana Constitution or statute. *See State v. Sproles*, 672 N.E.2d 1353, 1356 (Ind. 1996).

"The [T]ax [C]ourt is a court of limited jurisdiction." IND. CODE § 33-26-3-1 (2024). The Court's subject matter jurisdiction extends to original tax appeals and other matters specifically assigned by statute. IND. CODE §§ 33-26-3-2, -3 (2024); *State ex rel. Zoeller v. Aisin USA Mfg., Inc.*, 946 N.E.2d 1148, 1152 (Ind. 2011). Original tax appeals are cases that arise under Indiana's tax laws and challenge a final determination of the Indiana Board, the Indiana Department of Local Government Finance, or the Indiana Department of Revenue. *See* I.C. § 33-26-3-1; IND. CODE § 33-26-6-0.2 (2024); *Aisin*, 946 N.E.2d at 1152.

This case is not an original tax appeal as the Homeowner Associations do not challenge a final determination of the Board. Instead, this case arises under another grant of jurisdiction conferred on the Tax Court by statute. In particular, the Homeowner Associations have pursued this appeal under Subsection 5(g) of Indiana Code § 6-1.1-15-5. Appeals under this subsection are informally referred to as "direct appeals" because the provision requires the Tax Court to consider such appeals *de novo* and allows litigants to proceed to the Tax Court without first exhausting the administrative process and obtaining a final determination from the Board, effectively bypassing the latter stages of the Board's appeal process. *See* IND. CODE § 6-1.1-15-5(g) (2024); *accord Rolls-Royce Corp. v. Marion Cnty. Assessor*, 132 N.E.3d 522, 524-25 (Ind. Tax Ct. 2019). Subsection 5(g) is narrowly drawn and permits litigants to skip the Board in

7

only two circumstances: (1) when the Board fails to issue a final determination within the statutory time limits set by Indiana Code § 6-1.1-15-4, or (2) when the Board fails to issue a final determination within ninety days of granting a petition for rehearing. I.C. § 6-1.1-15-5(g).

In this appeal, the Homeowners Associations attempt to proceed under the second prong of Subsection 5(g) relating to petitions for rehearing. They argue that their Motion to Vacate the Board's order dismissing the case for failure to appear at the Board's December 22, 2021, hearing was, in fact, a petition for rehearing. (*See* Pet'rs' Resp. Opp'n Resp't Mot. Dismiss ("Pet'rs' Resp. Br.") at 10-12; Hr'g Tr. at 26-30.) They contend, therefore, that the Tax Court has subject matter jurisdiction over this direct appeal under Subsection 5(g) because the Board took the Motion to Vacate under advisement and set it for hearing but did not issue a final determination within ninety days, thereby opening the door to a direct appeal. (*See* Pet'rs' Resp. Br. at 5, 10-12.)

Determining whether the Motion to Vacate is a petition for rehearing or a motion under the failure to appear process is critical. If the Motion to Vacate qualifies as a petition for rehearing, it falls under Subsections 5(a) and 5(g) of Indiana Code § 6-1.1-15-5, thereby granting the Court subject matter jurisdiction if the statutory ninety-day requirement is satisfied. If it does not, judicial review must proceed under Subsection 5(b). Because the Court disagrees that the Motion to Vacate is a petition for rehearing within the meaning of Subsection 5(a), the Court concludes that it does not have subject matter jurisdiction over this appeal.

**The Rehearing Process Is Distinct from the Failure to Appear Process**

The Homeowners Associations' Motion to Vacate invokes a process that is

entirely distinct from the rehearing process outlined in Subsection 5(a). These two processes operate under separate Indiana Board rules, serve distinct purposes, and adhere to different time limits.

The petition for rehearing process arises under Subsection 5(a) and the Board's corresponding rehearing rule, 52 Indiana Administrative Code 4-9-2. *See* I.C. § 6-1.1-15-5(a); 52 IND. ADMIN. CODE 4-9-2 (2021). Under this framework, a party may submit a written petition or motion that requests a rehearing within fifteen days of the Board's final determination. *See* I.C. § 6-1.1-15-5(a); 52 I.A.C. 4-9-2(a)-(b). The Board then has fifteen days to decide whether to grant the petition; otherwise, it is deemed denied. *See* I.C. § 6-1.1-15-5(a). If granted, the Board may either conduct additional hearings or issue a decision based solely on the written record. *See* I.C. § 6-1.1-15-5(a)(1). Once a rehearing petition is granted, the Board must issue a new final determination within ninety days and the subsequent determination becomes subject to judicial review. *See* I.C. § 6-1.1-15-5(a)(2); 52 I.A.C. 4-9-2(c). Unlike other procedural remedies, a petition for rehearing does not allow for a party to raise new arguments or introduce new evidence. *See, e.g.*, *New York Life Ins. Co. v. Henriksen*, 421 N.E.2d 1117, 1118 (Ind. Ct. App. 1981) (explaining that petitions for rehearing address issues and arguments properly raised on appeal that were either disregarded or decided incorrectly). Instead, parties are confined to the claims and evidence already presented in the proceeding and may only challenge errors or omissions in the final determination. *See id.*

The rehearing process serves a corrective function, allowing the Board an opportunity to rectify errors or omissions of law, fact, or remedy. *See, e.g.*, *Griffin v. State*, 763 N.E.2d 450, 450-51 (Ind. 2002) ("A petition for rehearing is a vehicle that

9

affords the reviewing court the opportunity to correct its own omissions or errors.")

(internal quotation marks and citation omitted). It ensures that errors in the Board's final

determinations can be addressed within the administrative process and potentially

obviates the need for judicial review. Petitions for rehearing are not an opportunity to

relitigate decided issues or rehabilitate losing arguments. *See, e.g.*, *Prop. Dev. Co.*

*Four, LLC v. Grant Cnty. Assessor*, 42 N.E.3d 182, 184 (Ind. Tax Ct. 2015) ("[A] proper

petition should not ask the Court to re-examine all questions decided against the

petitioning litigant[.]") (citations omitted).

By contrast, the failure to appear process is governed exclusively by the Board's

failure to appear rule, which applies when a party does not attend a Board hearing. *See*

52 IND. ADMIN. CODE 4-9-4 (2021). Unlike the rehearing process, the failure to appear

process is not designed to correct an error in the Board's reasoning. The fact that a

party failed to appear is known by the Board. Instead, the process is specifically

designed to allow a dismissed party the opportunity to justify its failure to appear,

introducing new arguments and new evidence to support that explanation. *See* 52 I.A.C.

4-9-4(b) ("Th[e] objection must contain supportive facts stating why the party did not

appear."). It is designed to determine an issue for the first time (i.e., the consequence of

a party's failure to appear), not to remediate a previously determined matter. The

opportunity to correct arises only after the Board makes an informed determination in

the first instance after considering the evidence and the explanation put forth by the

dismissed party.

The Board's rule accomplishes this by reversing the typical sequence of

adjudication. The rule permits the Board to automatically dismiss a petitioner's case or

default a respondent if neither the party nor its authorized representative appears at a Board hearing. *See* 52 I.A.C. 4-9-4(a) ("If a party or authorized representative fails to appear at a hearing, the board *shall* issue an order of default or dismissal.") (emphasis added). A dismissed or defaulted party may then seek relief by filing a "written objection requesting that the order be vacated and set aside." 52 I.A.C. 4-9-4(b). Unlike the rehearing process, the petitioning party must request relief within ten, not fifteen, days of the Board's dismissal order. *Compare* 52 I.A.C. 4-9-2(b) *with* 52 I.A.C. 4-9-4(b). And, also unlike the rehearing process, the rule does not set a deadline for the Board to rule on the objection or automatically deem the objection denied if the Board fails to act within a certain period of time. *Compare* I.C. § 6-1.1-15-5(a) *with* 52 I.A.C. 4-9-4. Ultimately, the Board may vacate the dismissal or default order if the dismissed party demonstrates good cause for its failure to appear. *See* 52 I.A.C. 4-9-4(c). Once the Board has made its decision, the parties may then seek to have the Board reconsider its good cause determination using the rehearing process.

Here, the record confirms that the Homeowners Associations' Motion to Vacate was filed in response to the Board's Dismissal Order. The motion was titled "Motion to Vacate and Set Aside Notice of Dismissal" and offered a series of arguments with supporting exhibits to justify the Homeowners Associations' non-appearance. (Cert. Admin. R. at 2185-2225.) At no point, either in the Motion to Vacate or the accompanying briefing do the Homeowners Associations invoke or otherwise make reference to the rehearing process under Subsection 5(a) or the Board's rules. (*See* Cert. Admin. R. at 2185-2225, 2236-41.) Instead, their arguments are limited to

11

explaining their failure to appear as required by the failure to appear rule.[3] (*See* Cert. Admin. R. at 2185-2225, 2236-41.) The only conclusion that the Court can draw from this is that the Motion to Vacate was filed under the failure to appear rule and was not a petition for rehearing under Subsection 5(a) or the Board's rules. Consequently, because the two processes are distinct, the ninety-day provision in Subsection 5(a) never began to run, and the Board's alleged inaction on the Motion to Vacate cannot serve as a jurisdictional basis for a direct appeal under Subsection 5(g). The Court therefore concludes that it lacks subject matter jurisdiction over this case on this basis.

### The Law of the Case Doctrine Does Not Apply

The Homeowners Associations maintain that, because the Court treated their Motion to Vacate as a petition for rehearing in *Muir Woods III*, the law of the case doctrine precludes the Court from reaching a different conclusion in this appeal. (*See* Pet'rs' Resp. Br. at 10-14; Hr'g Tr. at 26-30.) The law of the case doctrine "is a discretionary tool by which appellate courts [may] decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts." *Cutter v. State*, 725 N.E.2d 401, 405 (Ind. 2000) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817-18 (1988)). While this doctrine "promote[s] finality and judicial economy[,]" it is not inflexible. *See id.* (citations omitted). The doctrine applies only to

---

[3] The record further reveals that the Homeowners Associations acknowledged that their Motion to Vacate was not a petition for rehearing in their prior appeal. (*See* Pet'rs' Reply Br. Supp. Pet. Jud. Rev. at 13, *Muir Woods III*, 225 N.E.3d 236 (Ind. Tax Ct. 2023) (Cause No. 22T-TA-00001) ("Petitioners did not seek/file a 'rehearing' of the [Dismissal Order] according to I.C. § 6-1.1-15-4 or 5, or 52 I.A.C. 4-9-2. Petitioners' January 3, 2022[,] filed Motion to Vacate and Set Aside Notice of Dismissal was not a motion/petition for rehearing.") (citation omitted).) And, fifteen days after filing their Motion to Vacate, the Homeowners Associations separately filed a petition for rehearing, titled "Petition for Rehearing of Order Denying Summary Judgment," seeking reconsideration of a separate order by the Board dismissing their request for partial summary judgment. (*See* Cert. Admin. R. at 2245-46, 2276-84.)

issues directly decided in prior proceedings and does not bar consideration of distinct issues in subsequent appeals. *Id.; Citizens Action Coal. of Indiana, Inc. v. Pub. Serv. Co. of Indiana, Inc.*, 582 N.E.2d 330, 334-35 (Ind. 1991). Courts retain the power to revisit prior decisions in extraordinary circumstances, *see State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994), including prior jurisdictional rulings, *see Christianson*, 486 U.S. at 817-18. The discretionary nature of this doctrine distinguishes it from *res judicata*, which compels judgment, and ensures that it does not constrain a court's authority to correct errors. *State v. Lewis*, 543 N.E.2d 1116, 1118 (Ind. 1989). "[O]ne directs discretion, the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." *Id.* (internal quotation marks omitted) (quoting *Southern Ry. Co. v. Clift*, 260 U.S. 316, 319 (1922).

The Homeowners Associations argue that the procedural path for this appeal was set in *Muir Woods III* when the Court treated the Motion to Vacate as a petition for rehearing under Subsection 5(a). At bottom, the Homeowners Associations' argument requires the Court to consider two questions: (1) whether the subject matter jurisdiction question presented here was considered in *Muir Woods III*, and (2) whether the Court's subject matter jurisdiction under the direct appeal process constitutes an extraordinary circumstance that renders the law of the case doctrine inapplicable. Answering these questions requires examining the differences between the statutory bases for jurisdiction in *Muir Woods III* and this case, as well as the fundamental nature of subject matter jurisdiction as an extraordinary legal principle.

*The Subject Matter Questions Presented in Muir Woods III and This Case are Different*

Both this Court's decision in *Muir Woods III* and this appeal concern questions of

13

subject matter jurisdiction under Indiana Code § 6-1.1-15-5. However, the bases for the Court's subject matter jurisdiction in each instance arise from two different subsections of that statute, each conferring separate appeal rights. *Muir Woods III* involved Subsection 5(b), which governs traditional tax appeals and applies when the Indiana Board has issued a final determination. *See* I.C. § 6-1.1-15-5(b); *Muir Woods III*, 225 N.E.3d at 242-43. This case, by contrast, involves Subsection 5(g), which creates a narrowly tailored exception allowing litigants to bypass the administrative review process when the Indiana Board fails to issue a final determination within the prescribed statutory timeframe. *See* IND. CODE § 6-1.1-15-4(f)-(h) (2024); I.C. 6-1.1-15-5(a), (g). These provisions reflect fundamentally different approaches to judicial review, balancing administrative deference under Subsection 5(b) with judicial oversight to address undue delays under Subsection 5(g).

Because the Homeowners Associations sought judicial review under Subsection 5(b) in *Muir Woods III*, the threshold question there was whether the Homeowners Associations had received a final determination. *Muir Woods III*, 225 N.E.3d at 242-44. Here, because the Homeowners Associations have sought judicial review under Subsection 5(g), the question for the Court is whether the Board failed to act on a petition for rehearing within the time limits set forth in the statute. Thus, the subject matter jurisdiction issue in *Muir Woods III* turned on the finality of a Board issued final determination, while the subject matter jurisdiction issue in this case turns on the legal consequences of the Board's deferred action.

Of critical importance is the fact that resolution of jurisdiction in *Muir Woods III* did not require the Court to determine whether the Homeowners Associations' Motion to

14

Vacate was a petition for rehearing. In *Muir Woods III*, the Court merely proceeded on the assumption that the Motion to Vacate was equivalent to a petition for rehearing under Subsection 5(a). *See id.* at 243-44. But the distinction was not essential to its subject matter jurisdiction analysis, as the Court ultimately concluded that the Board's decision to take the Motion under advisement and set the matter for hearing negated the finality of the Board's Dismissal Order. That conclusion would have remained the same even if the Court had treated the Motion to Vacate as an objection under the failure to appeal rule. The Board's decision to hear the Motion to Vacate would have still negated the finality of the Dismissal Order.

By comparison, in this appeal, determining whether the Homeowners Associations' Motion to Vacate satisfies the statutory requirements for a petition for rehearing is indispensable to establishing subject matter jurisdiction. The Homeowners Associations' claim depends entirely on whether the Board failed to act on a valid petition for rehearing within the statutory timeframe. *See* I.C. § 6-1.1-15-5(g); (*see also* Pet'rs' Pet. ¶¶ 4-13.) If the Motion to Vacate is not a petition for rehearing under Subsection 5(a), there is no basis for appeal under Subsection 5(g).

The law of the case doctrine binds subsequent proceedings only to issues directly decided in prior appeals, not to distinct matters arising from new proceedings or facts. *See Citizens Action Coal. of Indiana*, 582 N.E.2d at 334-35. The doctrine does not apply to issues that were not conclusively decided in a prior appeal or were addressed only in dicta. *See Perkins v. Fillio*, 155 N.E.3d 626, 633 (Ind. Ct. App. 2020), *trans. denied*. Such principles ensure that legal rulings remain anchored in facts and issues actually decided and prevent future proceedings from being burdened by ancillary

15

statements. Here, the jurisdictional question falls under a different statutory grant of authority, and determining whether the Motion to Vacate qualifies as a petition for rehearing is essential to establishing jurisdiction. For these reasons, the law of the case doctrine does not apply in this case.

*Subject Matter Jurisdiction Under the Direct Appeal Process*
*Is an Extraordinary Circumstance*

Nonetheless, even if *Muir Woods III* had squarely determined that the Motion to Vacate was a petition for rehearing, the subject matter jurisdiction question in this case presents an extraordinary circumstance warranting departure from that prior holding. Subject matter jurisdiction is the cornerstone of judicial authority. Without it, courts cannot act, and any decisions rendered are void. *State Bd. of Tax Comm'rs v. Ispat Inland, Inc.*, 784 N.E.2d 477, 481 (Ind. 2003). Unlike procedural errors, defects in subject matter jurisdiction strike at the heart of the judicial process, rendering judgments unenforceable and undermining public confidence. *See K.S.*, 849 N.E.2d at 541-42 (explaining that claims of procedural error do not implicate subject matter jurisdiction questions).

Because subject matter jurisdiction goes to the very core of a court's authority, the law of the case doctrine's primary purpose, promoting judicial economy, must yield to the imperative of accuracy. *See Huffman*, 643 N.E.2d at 901. It is for that reason that courts have routinely recognized questions of subject matter jurisdiction as an extraordinary circumstance, justifying departure from the law of the case doctrine. *See Christianson*, 486 U.S. at 817-18 (recognizing that clearly erroneous jurisdictional rulings justify revising prior decisions); *Stewart v. Kingsley Terrace Church of Christ, Inc.*, 767 N.E.2d 542, 545-46 (Ind. Ct. App. 2002) (holding that subject matter

16

jurisdiction "is certainly extraordinary enough to warrant" a court setting aside the law of the case); *Lewis v. Connecticut Gaming Pol'y Bd.*, 620 A.2d 780, 782-83 (Conn. 1993) (explaining that the doctrine does not preclude a judge from revisiting the issue of the court's subject matter jurisdiction); *Entergy Corp. v. Jenkins*, 469 S.W.3d 330, 336-38 (Tex. App. 2015) (holding "that subject matter jurisdiction cannot be conferred by a prior decision in [a] case" as appellate courts must ensure subject matter jurisdiction exists regardless of whether the parties challenge it), *review denied*. Revisiting prior decisions in these circumstances is not only warranted but necessary to prevent void or unenforceable judgments.

The statutory framework for direct appeals under Subsection 5(g) reflects the Legislature's recognition that traditional administrative review processes may not always function as intended. License to bypass administrative review places an even greater duty on the Court to confirm its jurisdiction. The administrative exhaustion doctrine "require[s] courts to honor the legislature's decision to vest authority in specialized agencies by deferring to those agencies in all matters the legislature has placed within their expertise." *Duke Energy Indiana, LLC v. City of Noblesville*, 234 N.E.3d 173, 179 (Ind. 2024). "Until the party exhausts all such remedies, courts [typically] cannot hear the case at all." *Id.* at 180 (internal quotation marks and citation omitted). Given this heightened duty, the Court cannot simply rely on the law of the case doctrine when its authority to hear the appeal remains in doubt. Courts have an independent duty to examine whether they possess subject matter jurisdiction, even when the parties fail to raise that concern. *See Kindred v. Indiana Dep't of Child Servs.*, 149 N.E.3d 304, 308 (Ind. Ct. App. 2020), *trans. denied*. Instead, the Court must confirm its authority and

17

give due deference to the jurisdictional limits set by the Legislature. Therefore, even if *Muir Woods III* had held that the Motion to Vacate was a petition for rehearing, the foundational nature of subject matter jurisdiction would warrant departing from the law of the case doctrine in this instance.

## CONCLUSION

Because the Homeowners Associations filed a Motion to Vacate instead of a petition for rehearing, they activated the failure to appear process rather than the rehearing process. Consequently, the Court concludes that it lacks subject matter jurisdiction over this appeal under Subsection 5(g) of Indiana Code § 6-1.1-15-5. Accordingly, the Court GRANTS the Assessor's motion to dismiss. Therefore, the Court DISMISSES and REMANDS this case to the Indiana Board for further proceedings consistent with this decision. The parties shall bear their own costs.

SO ORDERED:  2/18/2025

Justin L. McAdam
Judge, Indiana Tax Court

Distribution:
James K. Gilday, Jessica R. Gastineau, Indiana Board of Tax Review